## WESTERN OIL SALES CORPORATION v. BLISS & WETHERBEE. (No. 994–4860.)

Commission of Appeals of Texas, Section A. Nov. 23, 1927.

**I. Assignments ⊙⇒114—Provision that sales contract shall be binding on assigns of parties held not effective to release purchaser making assignment from its primary liability.**

Contract for sale of crude oil, containing provision making it binding on assigns of the parties, *held* not effective to release purchaser assigning contract from its primary obligations thereunder.

**2. Assignments ⊙⇒114—That contract is assignable does not signify that party thereto may release himself from liability under it by assignment.**

Mere fact that contract is invested by consent of parties or otherwise with the quality of assignability does not signify that either party may, by assigning contract, release himself from liability thereunder.

**3. Sales ⊙⇒177—Buyer's repudiation of contract after assignment thereof held anticipatory breach, justifying sellers in terminating contract.**

Buyer of crude oil, by repudiating liability for future deliveries after assignment of contract, *held* to have committed an anticipatory breach, entitling sellers to terminate contract.

**4. Sales ⊙⇒111—Seller justifiably terminating contract held under no obligation to continue deliveries.**

Sellers of crude oil, having terminated contract for just cause, *held* under no obligation to make further deliveries.

**5. Sales ⊙⇒384(7)—Seller justifiably terminating contract was not required to waive breach and continue deliveries to buyer's assignee to minimize damages.**

Sellers of crude oil justifiably terminating contract *held* not required, in their effort to minimize damages, to waive buyer's breach and continue to deliver oil to assignee of buyer.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by Bliss & Wetherbee against the Western Oil Sales Corporation. Judgment for plaintiff was affirmed by the Court of Civil Appeals (292 S. W. 640), and defendant brings error. Affirmed.

Patterson & Grantham, of Cisco, for plaintiff in error.

R. M. Rowland, of Fort Worth, and Scott W. Key, of Eastland, for defendant in error.

HARVEY, P. J. On March 7, 1923, McCamey, Sheerin & Dumas, a partnership, who will be designated herein as the sellers, held certain tracts of land under oil leases, from which they were producing oil. On that day they made and entered into the following

contract of sale with Western Oil Sales Corporation, the plaintiff in error, to wit:

"Agreement made and entered into on this 7th day of March, A. D. 1923, by and between J. E. McCamey, J. J. Sheerin, and H. O. Dumas, a partnership, as party of the first part, and the Western Oil Sales Corporation, a corporation, as party of the second part, witnesseth:

"That the party of the first part, in consideration of the premises and agreements hereinafter contained, and by the party of the second part to be done, kept, paid, performed, and carried out, hereby sells and agrees to deliver to said party of the second part, in tanks, at its wells, all of the crude oil produced from said wells located in what is known as the Pioneer oil field at Pioneer, Eastland county, Tex., and on four leases known as the Armstrong lease consisting of 20 acres more or less; the Armstrong lease consisting of 60 acres more or less; the Moore lease consisting of 30 acres more or less; the Moore lease consisting of 10 acres more or less.

"The party of the first part agrees to sell and deliver the oil from the above-described leases to the party of the second part for a period of six months from the date the party of the second part connects up and begins running the oil, subject to the terms and conditions of a certain division order, a copy of which is hereto attached. It is agreed that in case of any conflict of terms between the said division order and this contract, the terms of this contract shall govern.

"In consideration whereof, party of the second part hereby agrees to lay its gathering lines to and connect same with the tanks of the party of the first part and to run oil therefrom, and to pay therefor the posted market price of the Prairie Pipe Line Company for crude oil on the date said oil is run by the party of the second part, plus 25 cents per barrel premium.

"This agreement shall extend to and be binding on the parties hereto, their heirs, executors, administrators, successors, and assigns.

"In witness whereof, the parties hereto have hereunto set their hands and seals on the day and year hereinabove written."

By mutual consent of the contracting parties, no division order was attached to the contract, as mentioned therein, and the contract was put in operation without such division order. The terms of the contract were carried out by the parties for about three months, when the plaintiff in error, who will be designated herein as the Western Corporation, assigned the foregoing instrument to the American Oil Company; the latter company assuming all obligations of the Western Corporation under the instrument, and acquiring all its rights thereunder. Thereupon the Western Corporation notified the sellers of such assignment, demanding that they look to the American Oil Company for their pay for all future deliveries of oil under the contract of sale, and disclaiming and renouncing all liability on the part of said corporation for any future deliveries of oil under the contract. The American Oil

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Company, claiming to have succeeded to all the obligations of the Western Corporation under the contract of sale, as well as to the rights of the corporation thereunder, made demand of the sellers that the latter continue to make deliveries of oil to said oil company under the sale contract; the said oil company being solvent at the time. This demand was refused by the sellers, except upon condition that the Western Corporation should recognize its liability under the contract, which the said corporation refused to do, but reiterated its renunciation of liability thereunder. This attitude of the Western Corporation was maintained by it on the asserted ground, which is urged here also, that because the contract of sale, by its terms, ran to the assigns of the contracting parties, the assignment that had been made to the American Oil Company had effect to transfer to that company the obligations of the Western Corporation under the contract of sale and to relieve the corporation of those obligations. The sellers treated the contract of sale in question as terminated. On July 13, 1923, they conveyed their leaseholds to the defendants in error, Bliss & Wetherbee, and assigned to them all their rights and claims against the Western Corporation growing out of the contract of sale in question. The defendants in error thereafter brought this suit against the Western Corporation for damages resulting from its alleged breach of said contract of sale in repudiating its liability under the contract, as stated above. The trial court found as a fact that the sellers and their assignees, the defendants in error, exercised due diligence in minimizing their damage resulting from said breach, and rendered judgment for the defendants in error for $4,-420.25 damages. The Court of Civil Appeals affirmed that judgment. 292 S. W. 640.

## Opinion.

[1] The contract of sale, at the time it was made, was wholly executory, and was constituted of the promise of the sellers, on the one hand, to the effect that they or their assigns would sell and deliver to the Western Corporation, or its assigns, the oil produced from the leaseholds named, as it was produced during the six months' period named in the contract, and, on the other hand, of the promise of that corporation to the effect that it or its assigns would pay for the oil thus delivered, as stipulated in the contract. These obligations of the respective parties were interdependent, and there is no provision in the contract for the release of either

promisor by the substitution of the promise of another. The provision declaring that the agreement should extend to and be binding on the assigns of the parties is not to be construed as authorizing such a release.

[2] The mere fact that a contract is invested, by consent of the parties or otherwise, with the quality of assignability, does not signify that either party may, by assigning the contract, release himself from liability under it. When a contract is assignable, a party may assign the benefits of his contract to another, and delegate to his assignee the performance of his obligations under the contract; but he remains liable for the proper performance of those obligations, unless the other party to the contract consents for the assignment to have the effect of releasing him. 5 C. J. § 45, p. 878, and authorities there cited.

[3] The Western Corporation was not released from its contract by the assignment to the American Oil Company. The unexecuted portion of the contract remained constituted, as it was in the beginning, of the mutual promises of the contracting parties. When, therefore, the corporation repudiated all liability for future deliveries of oil, it committed an anticipatory breach, and the sellers thereupon became entitled to terminate the contract. Moore v. Jenkins, 109 Tex. 461, 211 S. W. 975; Greenwall v. Markowitz, 97 Tex. 485, 79 S. W. 1069, 65 L. R. A. 302; Kilgore v. Educational Ass'n, 90 Tex. 139, 37 S. W. 598.

[4, 5] The contract having been thus terminated, the sellers' obligation to make future deliveries of oil under it was released; and the sellers were under no obligation which required them to substitute the promise of the American Oil Company for that of the Western Corporation which had been repudiated. Nor was it the duty of the sellers, in order to minimize their damage, to waive the breach and continue to deliver oil to the oil company under the contract. Nor is the evidence such as to establish, as a matter of law, that the sellers, or the defendants in error, failed to exercise ordinary prudence and diligence to mitigate the damage flowing from said breach.

We recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.