## NEEDHAM v. AMERICAN NAT. INS. CO.
### No. 12245.

Court of Civil Appeals of Texas. Dallas.
Oct. 10, 1936.

Rehearing Denied Nov. 14, 1936.

B. Ray Smith, of Corpus Christi, for appellant.

Handley & Shaeffer, of Dallas, for appellee.

JONES, Chief Justice.

This is a suit by William P. Needham, appellant, against the American National Insurance Company, appellee, to recover damages for the alleged unconditional repudiation of the disability clause in an insurance policy issued to him on August 7, 1924. Under a peremptory instruction by the court, a verdict was returned in favor of appellee, judgment entered in accordance therewith, and appellant has duly perfected an appeal to this court. The following are the necessary facts:

The policy issued insured appellant against death and disability on the payment of a quarterly premium of $8.30. The death benefit under the policy was payable to appellant's wife. The disability benefits were payable to appellant. The following clauses contain the disability contract of the insurance policy in question:

"AGREES TO PAY—Benefits for Total Permanent Disability. Subject to the conditions and provisions set forth under this heading on page two hereof, the Company will grant Benefits for Total Permanent Disability, as follows:

"(1) WAIVER OF PREMIUMS—The Company will during the continuance of such disability waive payment of each premium as it thereafter becomes due, commencing with the first premium due after receipt of said due proof of disability.

"(2) LIFE INCOME TO INSURED— Six months after the receipt of said due proof of disability the company will pay to the Insured, if then living and such disability still continues, the sum of Ten Dollars, and a like sum monthly thereafter during the life of the Insured and the continuance of such disability.

"PRIVILEGES AND CONDITIONS— Benefits for Total Permanent Disability. The Company will grant the benefits for total permanent disability set forth on page one hereafter, only after one full year's premium shall have been paid and before default in the payment of any subsequent premium hereof, if Insured, prior to obtaining the age of sixty years at nearest birthday and while this policy is in full force, shall furnish due proof to the Company at its Home Office that he has become totally and permanently disabled by bodily injury or disease, so that he is, and presumably will be permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than sixty days, no benefits for such Total Permanent Disability to accrue however prior to the submission of due proof, as above provided.

"Although the proof of total permanent disability may have been accepted by the Company as satisfactory, the Insured shall, at any time thereafter, and from time to time, but not oftener than once a year, on demand, furnish to the Company due proof of the continuance of such disability, and if the Insured shall fail to furnish such proof, or if it shall appear to the Company that the Insured is able to perform any work or follow any occupation whatever for compensation, gain or profit, no further premiums shall be waived and no further income shall be paid." .

Mrs. Needham, wife of appellant and the beneficiary in the provision of the policy, insuring against the death of appellant, was not made a party to the suit, and the petition alleged that he (appellant) only sought a recovery for damages, based upon the breach by defendant of the disability provision, and that this suit was brought without in any wise affecting the rights of the wife to the death benefit payable to her. A plea in abatement was filed by appellee, on the ground that Mrs. Needham was a necessary party to the suit. This plea was overruled. The quarterly premiums on the policy were regularly paid up to and including April 7, 1930, and the policy was in force at the time appellant was injured.

On April 29, 1930, appellant suffered severe personal injuries while engaged in the duties of his employment with the Texas Power & Light Company, which totally and permanently disabled him, within the provisions of the policy. The injuries were caused by a jack giving way that had raised the rear end of a heavy loaded truck and crushing appellant in the vicinity of his hips between the concrete pavement and the bottom of the truck. Appellant was at once taken to a hospital in the city of Dallas, where he was examined and treated, remaining at the hospital, except on a few short occasions, for a period of approximately one year. Dr. E. E. Thomasson was the attending physician and surgeon, and he described Needham's condition, in response to questions, as follows:

"* * * At the time he (appellant) came to the hospital he was suffering a rather severe shock, and gave a history of having been laying on his side on the pavement and one of these big trucks that they haul the material in had fallen on the opposite hip and crushed him to the street almost, made quite a compression, and fractured his pelvis. It had just jammed one bone in on the other—the one sort of dove-tails in the other and fractured the cross bone in front, both the descending forward and the transverse forward, and fractured the wing of his pelvis and then the transverse process, that is, two little spurs that come out on the last lumbar vertebra. He also had, we catheterized him and found some blood in the bladder, so I made a diagnosis of the ruptured bladder as well, and under novocain, he was too sick to take an anesthetic, and under novocain I opened up the abdomen in the front of the bladder and found quite a catarrhal congestion in the passage. All the left side and tissues about the bladder were all filled with blood and urine. I don't think he had emptied his bladder for sometime and when this blow hit him, the urine all went into the tissues. A drain was put in and we put him on what we term a Bradford frame. It is a frame with posts of metal on each side and covered with ducking so he can lay on it and be lifted up and down for his kidneys and bowels to be moved without handling. It immobilizes him. We readjusted the bones the best we could and put him in this frame and then he was kept quiet without turning or moving for I don't know, something like a month or six weeks the wound drained—I don't know for how long, but a long time.

"Some little pieces of bone worked out and, I guess—I don't know just how long he was in the hospital, but it was off and on for about a year. He was in that time for three or four months and then was out for a while and came back again and about a year later I had to open the bladder again and remove a piece of stone that had formed in the bladder, about the size, a pretty good large stone, and since that time he has had a paralysis of the bladder and urethra, that is, a tube running from the bladder to the outside; he has had absolutely no control of the urine and he has had no elimination, complete paralysis in that * * *."

Due claim was made by appellant under the provisions of the policy for the $10 monthly remuneration for total and permanent disability. This claim was allowed by appellee, and payment was made to appellant at the rate of $10 per month for twenty-four months, when appellee refused to make further payments and notified appellant of this fact, and the further fact that the quarterly premiums would be charged.

When appellant received the notice that appellee would no longer continue the monthly payments for permanent and total disability, and no longer waive payment of premiums, he had several communications with C. L. Barbazon, in charge of appellee's branch office in Dallas. In each of these communications he maintained that, because of his injuries, he was totally and permanently disabled from performing any character of work, and wanted to know if there was anything further he could do to convince appellee of this fact. He was advised by Barbazon that he might get additional medical proof of his then condition. This appellant did and delivered such proof to the branch office in Dallas. This proof showed that the permanent and total disability still existed. This additional proof was sent by Barbazon to the home office at Galveston, and some days later, according to appellant's testimony, the following conversation took place between Barbazon and appellant: "Well, in that part of the conversation I asked him if I should go before other doctors, or if he would suggest a doctor they wanted to examine me, and I told him I would be willing to submit to any examination or get proofs of any friends or neighbors that know me to show I was disabled, and if there was anything I could do I was willing to do it, and wanted to do it to show I was still as disabled as I have been the whole time before that, and he said they wouldn't accept any more proofs. That the policy was cancelled out or annulled and that further proof would be useless—would be just a waste of time." Then again, appellant testified that Barbazon told him that the policy was canceled or annulled, and that they would not waive any more premium payments, and that appellant would have to pay premiums to keep in force the life feature of the policy. It is a reasonable inference that this information was conveyed to appellant on the authority of the home office.

After appellant was informed that any further efforts on his part to establish, by any proof appellee would suggest or demand, his total and permanent disability, would be a "waste of time," and that this

clause of his policy was canceled, this suit was instituted. In his third amended petition, on which he went to trial, appellant's allegations as to the unconditional repudiation and cancellation of the disability feature of his policy are full and complete. On the first trial of this case, the trial court sustained a general demurrer to the petition, and from such ruling appellant appealed to this court, and the case was transferred to the El Paso Court of Civil Appeals. It was there held that, as against the general demurrer, the petition stated a cause of action. A writ of error was applied for and dismissed by the Supreme Court, for want of jurisdiction. The opinion of the El Paso Court of Civil Appeals, reversing and remanding the case for a trial on its merits, is reported in 78 S.W.(2d) 1059, and is styled Needham v. American National Insurance Company, to which reference is here made for a concise statement of the pleadings. This decision settles the issue as to whether a cause of action is alleged by appellant. Does appellee's proof tend to sustain the allegations as to appellant's then condition and future condition, at the time appellee cancelled the contract? In other words, did appellant sustain the case alleged by substantial evidence? If so, then this case must be reversed and remanded.

As to appellant's present and future condition, Dr. Thomasson, the attending physician, testified: "I don't believe, in my opinion, he is going to be any better, and he is going to have to have, continue to have, these sounds that we spoke of, off and on, from once to twice to three or four times a year as long as he lives. We have tried to dilate this urethra by passing sounds on him once a month and some every two weeks for a whole year at a time, but we are unable to keep it open and every so often it closes down on him and he has to go take another anesthetic and (we) pass sounds on him again, and this will continue, and he also accumulates a lot of pus, due to the fact he has retained urine that stayed in the bladder and decomposes and then is when he begins to have his pains and temperature and he has to go through and have it dilated again, and then it drains freely for a few weeks or months, and I think that will keep up the rest of his life. I don't think that his paralysis will ever get any better. It has been five years and that is long enough for it to improve, if it will improve. Usually paralysis clears up in two years, if it is going to clear up at all."

Dr. Thomasson further testified:

"Q. Doctor, from your own examination of the plaintiff and the injuries that you have observed personally, together with conditions found for which you have been treating the plaintiff, and the condition which you have found from the history of the case, and the condition portrayed by the X-ray pictures and examination made of the plaintiff, and from your observation of the case, together with your experience and training as a physician and surgeon, are you able to state with a reasonable degree of certainty and accuracy in the ordinary course of nature whether or not the plaintiff will be wholly prevented by such injuries from performing any work for compensation, gain or profit or from following any gainful occupation? A. In my opinion he will.

"Q. Have those conditions, doctor, in your opinion, existed at all times since the inception of his disability? A. Yes, sir."

In addition to the above, appellant testified as to his condition in more detail than that given by Dr. Thomasson, but to the same effect as to his condition, and also testified that since his injuries he had done no work, not even chores around the house; that he had done no work because he was unable to do so, and was unable to earn any money in any character of employment. In this testimony he was corroborated by his wife, in all material respects. This testimony raises the issue of appellant's total and permanent disability.

Appellee, in its pleadings, denied the cancellation of the contract of insurance, also denied that it had repudiated or refused to adhere to the contract, and admitted its existence and validity, and that it was in full force and effect, but denied that appellant was then disabled within the purview of the contract, and for that reason it had refused, and still refuses, to pay any disability benefits for the claim of disability, as alleged by appellant. Appellee affirmatively alleged that it did not, nor did any one by its authority, ever repudiate, deny the existence of, or otherwise commit any anticipatory breach of the contract sued upon. Appellee affirmatively pleaded that, if it should be determined by a court of competent jurisdiction that appellant was totally disabled and would presumably remain so, and that appellant was in such condition at the time appellee had declined to pay him any further disability benefits, it would pay appellant the benefits with inter-

est, and would continue to pay him so long as he was disabled, within the terms of the policy.

■ While appellee offered sufficient evidence to raise jury issues on the questions raised by its pleadings, this being an appeal on peremptory instruction against appellant, we shall not review appellee's evidence, for, under the disposition of the case against a plaintiff on peremptory instruction, appellant's evidence must be taken as true, and every reasonable inference arising from such evidence must be indulged in favor of appellant, notwithstanding all such evidence may have been contradicted by substantial evidence offered by appellee, and a contrary reasonable inference could have been indulged. Bragg v. Houston Elec. Co. (Tex.Civ.App.) 264 S.W. 245; First National Bank of Amarillo et al. v. Rush (Tex. Com.App.) 210 S.W. 521; Gattis et al. v. Kirk et al. (Tex.Civ.App.) 12 S.W.(2d) 589; 3 Tex.Jur. Sec. 741, page 105, and authorities therein cited; Shaffer v. Rhyne et al. (Tex.Civ.App.) 75 S.W.(2d) 133.

Applying the rule above announced, governing this appeal, it must be considered as an established fact that: (a) Appellant received on April 29, 1930, personal injuries of such a serious nature as to totally and permanently disable him from performing any work for compensation, gain, or profit, or from following any gainful occupation; (b) that such total disability still existed at the time appellee refused further payment to appellant, existed at the time of the trial, and will continuously exist throughout appellant's life; (c) that appellee canceled the indemnity feature of the insurance contract in so far as it could do so, and thereby, in positive terms, unconditionally abandoned the indemnity feature of said policy. The issues on this appeal must be discussed upon the assumption of the truth of these facts.

What were the respective rights of appellee, the insurer, and appellant, the insured, when this insurance policy was executed? Appellee had the right to receive payment of the quarterly premiums at the time and in the manner specified in the policy. Also the right, if appellant should fail to make payment of any premium in due time, to declare the policy forfeited. Under the terms of the policy, appellee also had the right, after it had accepted as satisfactory appellant's initial proof of total and permanent disability for two years, to demand proof of appellant that his permanent and total disability still existed, and if it concluded in good faith that such disability had ceased to exist, to refuse further payment on such policy, and on notice to appellant again to require the payment of quarterly premiums and to forfeit such policy if a premium was not paid.

■ Appellant had the right, under the terms of the policy, to receive from appellee the stipulated monthly payment as long as his alleged disability should exist; also, to have the policy kept alive during the continuance of such disability without the payment of any quarterly premiums. These are contractual rights which cannot be arbitrarily taken from appellant by appellee.

At the inception of the discussion of the law of this case, we are met with the proposition by appellee that, in a suit for damages, because of the anticipatory breach of a contract by one party, it must clearly appear that the entire contract has been breached, and if it only appears that there is a partial breach of the contract, no such suit will lie; that in the instant case, there is no claim by appellant that the life feature of the contract was in any way breached, as clearly appears from appellant's petition, hence the suit for damages on the alleged anticipatory breach must fall. This calls for a determination as to what is the entire contract which is the basis of this suit. It is true that the policy of insurance issued to appellant contains two distinct features—one insuring the life of appellant, naming appellant's wife as the sole beneficiary of that feature of the contract; another (clearly a separate and distinct right) calls for payment to appellant as the sole beneficiary in a stipulated amount, if he should suffer during the lifetime of the contract total disability, under the terms of the policy. These two features are as separate and distinct from each other as would be the case if they were secured by separate contracts; that is, one policy for life insurance, naming the wife as beneficiary, and another policy for accident insurance, naming appellant as the beneficiary. Certainly, there can be no contention, if appellant had secured the identical rights given in this policy by two separate policies, that there must be a complete abandonment of both policies before the instant suit can be maintained.

■ As applied to this case, we construe the expression used in a number of decisions, to the effect that before a suit would lie for anticipatory breach it must be shown there exists a breach of the entire contract

of insurance by the insurer, to apply only to the feature of the contract that is under investigation, where such feature is complete within itself and is not so related to another feature of the contract as that both rights must stand or fall together. To illustrate: If in the instant case appellee had refused to make the monthly payment, on the ground that appellant was not totally disabled, then there would not be a breach of the entire contract under inquiry, nor a repudiation of it; for appellee has not denied entire liability under the indemnity feature of the contract, or any future payments on account of future total disability, and such would be but a partial breach of the disability feature of the contract; appellant would be left free to maintain his suit on an existing contract on the claim that appellee was mistaken in its claim that he was not totally disabled. It leaves the contract in force as to any future claims under the disability feature, and hence there would not be a breach of the entire contract. Such, however, is not this case. Under the evidence of appellant, which must be accepted as true on this appeal, the disability feature of the contract had no existence because appellee has canceled it and deleted such feature from the insurance contract. This is a repudiation of the entire disability contract.

This same contention was necessarily before the court in the former suit, and a general demurrer was sustained by the trial court, and reversed and remanded on appeal, by the El Paso Court of Civil Appeals. If the El Paso Court had held to the doctrine, as claimed by appellee, that there would have to be a clear repudiation of both the indemnity feature of the contract and of the life feature, before a cause of action would lie for an anticipatory breach, then the trial court necessarily did not err in sustaining the general demurrer, and that decision would necessarily have been different. Needham v. American National Ins. Co., supra. This contention is overruled.

Likewise, and for the same reasons, we overrule the contention that appellant's wife, the beneficiary in the life feature of the contract, is a necessary party.

As we have seen, the indemnity contract for monthly payments was unconditionally repudiated by appellee, for the cancellation of this contract is an unconditional repudiation of same, evidenced in the strongest possible manner. Appellant accepted such renunciation and seeks by this suit to recover damages for the anticipatory breach of all future monthly payments under the policy. This he had the right to do. Kilgore v. Northwest Texas Baptist Educational Ass'n, 90 Tex. 139, 37 S.W. 598; Moore v. Jenkins, 109 Tex. 461, 211 S.W. 975; Pollack v. Pollack (Tex.Com.App.) 46 S.W.(2d) 292; Needham v. American National Ins. Co. (Tex.Civ.App.) 78 S.W.(2d) 1059; Sanders v. Universal Life & Acc. Ins. Co. (Tex.Civ.App.) 74 S.W.(2d) 301; American Bankers' Ins. Co. v. Moore (Tex. Civ.App.) 73 S.W.(2d) 620. There are other jurisdictions which deny a suit for anticipatory breach of an insurance policy, but we feel constrained to follow the Texas authorities.

Appellant pleads his measure of damages to be a sum representing the aggregate of the present value of his future monthly payments during his life expectancy, as shown by an accredited mortality table, and submitted proof of such expectancy. Is this the correct measure of damages? It can be said, as a matter of law, that appellant, since his injuries, is not an insurable subject, for the same character of indemnity insurance, issued to him by appellee in 1924, and hence by the wrongful act of appellee in canceling his indemnity insurance, he is deprived throughout his life of such protection. It is elementary that appellant is entitled to be fully compensated in damages for the wrong suffered by the cancellation of this insurance. What is that wrong? It is that appellee had contracted to pay him $10 per month during the entire period of his remaining life if he should suffer total and permanent disability, and of which he is deprived by appellee's wrongful act. The only measure of damages commensurate with his loss, occasioned by the repudiation of this insurance contract, is the present worth of his contract monthly payments during the remainder of his life. We therefore hold that the measure of damages pleaded is proper.

We have examined all other assignments of error and have reached the conclusion that none of them present reversible error. In our opinion, appellant stated a cause of action in his petition and sustained same by sufficient evidence to require a submission to the jury of the various contested issues.

It necessarily follows that, in our opinion, this cause should be reversed and remanded, and it is so ordered.

Reversed and remanded.