**LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Dr. Harry Leslie KLOTZ, Appellee.**

**No. 16879.**

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1958.

Rehearing Denied March 10, 1958.

its applying members. The policy afforded broad coverage. It provided for payment of the stated weekly indemnity for such time, not to exceed 520 weeks for any one sickness, during which " * * * sickness wholly and continuously disables and prevents the Insured from performing the duties of his profession * * *." In a negative way, the policy required that during such disability the Insured be under the regular care and attendance of a physician other than himself.

On March 2, 1956 the Assured suffered a heart attack which, it was conceded, had totally disabled him up through the time of trial. Four weekly payments of $100 indemnity had been made when they were stopped by the Insurer on the ground that the Assured's medical history, received subsequent to the initial payment, established that certain statements in the application[2] were false.

Actually while it is this that is at the bottom of the controversy so that it may be described as the basic issue, the decision on it is, in contrast to the others, the easiest to reach. This is so because, coming here as it does, with the buckler and Shield of Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A., the burden procedurally is heavy in demonstrating that the trial judge's findings were clearly erroneous. And from a substantive point of view, the policy of Texas, by successive requirements, establishes a substantial bulwark which the Insurer must overcome. It must first prove that the misrepresentation was of a fact material to the risk.[3]

D. L. Case, Dallas, Tex., Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for appellant.

David L. Tisinger, Gaynor Kendall, Austin, Tex., Tisinger & Sloan, Austin, Tex., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In this declaratory judgment action by the Insurer with a successful counterclaim by the Assured for damage equivalent to the commuted value of weekly, total disability sickness benefits, the questions for us are: (1) whether the policy was voided by fraudulent misrepresentations of the medical history by the Assured; if not, (2) whether there was an anticipatory breach; and if so, (3) whether this entitled the Assured to recover as damages the present value of the payments for future disability while under the future care of a physician; and finally, (4) whether the Assured was entitled to Texas statutory penalties of 12% and attorney's fees on all or a part of the recovery.

Dr. Klotz, the Assured, a general physician and surgeon with an extensive practice in Austin, Texas, on December 27, 1955, made written application for a certificate of insurance, subsequently issued January 18, 1956, for a plan[1] "B" coverage providing $100 weekly indemnity under a Master Group policy issued to the Texas Medical Association for

---

1. Four plans, with other options concerning hospital benefits, time of commencement, etc., not pertinent here, available at different premiums and designated by the letters A, B, C, and D, provided weekly indemnities of $150, $100, $75, and $50, respectively.

2. "1. Have you been disabled by either accident or sickness or received medical or surgical attention or service during the past 10 years?     Yes
   "When          Appendectomy 1952

"What for?          3 years ago
"Duration?          3 weeks
  *       *       *       *       *
   "3. Have you ever had any disease of the lungs, heart, kidneys, stomach or nervous system or suffered from diabetes, cancer, tumors, back ailment, or tuberculosis in any form?
   "(If so, when, what for and duration?) No."

3. Tex.Rev.Civ.Stat.Ann. (Vernon) Insurance Code, Arts. 21.16, 21.18; Gorman v.

Materiality having been proved, the burden is then " * * * on the insurer to plead and prove, not only that the answers made by the insured were false or untrue, but that the insured knew, or should have known, that they were untrue, and that he made them willfully and with the intention of inducing the insurer to issue him a policy." Clark v. National Life & Accident Insurance Co., 145 Tex. 575, 200 S.W.2d 820, 823. Bound as we are by Texas law, we have said " * * * the courts of Texas have firmly determined that false representations to avoid a policy must have been willful and made with a design to deceive or defraud." Equitable Life Assurance Soc. of United States v. Alvarez, (Tex.) 5 Cir., 141 F.2d 551, 552.

█ The Insurer asserts that it met this heavy burden since it was uncontradicted in fact that the answers to questions 1 and 3, note 2, supra, were incorrect in at least the eight respects [4] described by it as from (a) to (h).

On (a), note 4, supra, there was no proof that the fact of this slight virus cold in 1949 was material, nor was there as to the fact of making cardiograms in (f) and (h). That he had been examined for prospective life insurance, (b), (c), (d), (g), did not establish that he had "received medical or surgical attention or service" inquired of in question 1, note 2, supra. This leaves then of consequence the fact, (e), that while he was in the hospital for the appendectomy, he suffered an attack of pericarditis and the fact, (b), (c), (d), and (g), that he had moderate hypertension.

These might be relevant to the questions in the Application if either amounted to medical treatment, i. e., "attention or service" under question 1, or involved a " * * * disease of the * * * heart * * * in any form" under question 3, note 2, supra.

As to the hypertension, the court found, as the facts compelled, that Dr. Klotz had not been treated for this condition, nor had he received medical or surgical advice or attention. It was not then within the compass of question 1. And then on evidence from an impressive array of competent doctors of standing in the community and their profession, in which the Insurer's expert stood alone in his contrary opinion though recognizing the existence of a "conflict of opinion" on it, the court found as a medical fact that hypertension was not a disease of the heart. It was not then within question 3.

Added to this was the fact acknowledged by the Insurer's chief underwriter that usually life, health or accident insurance applications made express inquiry as to hypertension or high blood pressure. As the questions used here did not fairly require affirmative disclosure of this history, the omission would not amount to a misrepresentation, even though the subject generally might be material. And on the Assured's good faith, his testimony was uncontradicted that, not being asked, he assumed the information was not desired and had he understood otherwise, he would have given the full information.

Jefferson Standard Life Ins. Co., Tex. Civ.App., 275 S.W. 248, 251; Ohio Casualty Ins. Co. v. Stewart, Tex.Civ.App., 76 S.W.2d 873, 877; Pacific Mutual Life Ins. Co. of California v. Johnson, 5 Cir. (Tex.), 74 F.2d 367, 370.

4. (a) Dr. Morgan prescribed for Appellee's respiratory infection in 1949;

(b) he was examined by Dr. Cooper on August 9, 1952 for life insurance;

(c) Dr. Cooper found him to be suffering from moderate hypertension with readings varying from 146 to 170 systolic and from 90 to 100 diastolic;

(d) as a result of the examination a policy of life insurance was issued at a stepped-up rate;

(e) while in the hospital for the appendectomy he suffered an attack of pericarditis;

(f) during his confinement with the appendectomy and pericarditis and following his release from the hospital Dr. Morgan made electrocardiograms;

(g) Dr. Morgan examined Appellee for a life insurance policy on a date following his appendectomy; or,

(h) that appellee had numerous electrocardiograms taken over a 3-year period.

A similar analysis demonstrates that the court's findings are adequately supported as to pericarditis.[5] This is an inflammation of the pericardium, the sac in which the heart rests. The evidence was undisputed that when he was stricken with acute appendicitis, Dr. Klotz was suffering from a chest cold or bronchitis. In surgery he experienced minor pains in the chest which, after examination and repeated cardiograms, (each of which was normal, i. e., negative) over the next week or two, led to a diagnosis of pericarditis associated with, or an extension of, the bronchial infection to the pericardium. This the court expressly found. Again there was an abundance of medical opinion from experts of unchallenged competence. In their view pericarditis which was an extension of bronchial infection was not a disease of the heart. One of the Insurer's experts agreed expressly that it was not a "true heart disease," and the other, testifying on direct that pericarditis "may be" a heart disease, readily conceded on cross examination that it could also be a mere "extension of a bronchial infection" such as a cold, and "therefore not heart disease." On this the court found that it was not a heart disease. Thus this event was not within question 3.

So far as question 1 was concerned, the court considered that the pericarditis was incidental to the treatment being received by him in connection with the appendectomy for which he had entered the hospital. The court further found, on ample basis, that "the insured promptly and completely recovered from said ailment [pericarditis], and suffered no lasting physical damage therefrom; and such illness was not material to the insurance risk."

With the answers thus narrowed to this one, if it is assumed that the reply to question 1 was incorrect by the omission of pericarditis, the Insurer had yet the heavy burden of going the next step to establish bad faith with a purpose to defraud. As to this and all of the answers, the court found that these "were given in good faith, and without any intention on the part of the insured to deceive the insurer, or to conceal from the insurer any relevant fact in connection with the issuance of the certificate of insurance applied for."

There is no evidence which directly points to a purpose to deceive. None is suggested save the fact that as a man, the Assured knew of his own treatment for pericarditis, and as a doctor examining applicants professionally for life insurance, he knew of its general materiality, so that we must impute, as a matter of law, a deliberate intention to defraud. Standing over against this, which the trial court could, and presumably did credit, besides the apparently minor nature of this incidental condition from which he fully recovered, was the acknowledged professional standing amongst his fellow doctors and in the community, his long service, several years as its president, on the Texas State Board of Medical Examiners, his vigorous, energetic active professional and personal life with no indications of imminent physical infirmities soon to strike, his deliberate choice of plan B, rather than plan A, despite its larger indemnity, his prior purchase of life insurance at medically rated premiums, and his express statements that he attempted honestly and fairly to give the full information requested. To cap it all, the court also had before it the Insurer's own characterization[6] of these misstatements as " * * * an unfavorable past health history which you [Dr. Klotz] apparently *inadvertently* omitted in completing your application."

Whether the omission from the answers of this one medical event was an innocent mistake of memory or judgment, or was, on the other hand, from

---

5. In the June 1956 conference, note 9, infra, the letter of rescission referred only to hypertension with no mention of these other inaccuracies.

6. This is from the letter repudiating liability under the policy from the Insurer to Dr. Klotz delivered to him in June 1956. See note 9, infra.

a motive to defraud the Insurer was a question of fact for the Trial Court. The findings are not clearly erroneous and certainly there is no basis for concluding that this was a fraudulent misrepresentation as a matter of law.

On fact-findings thus approved, the District Court was right, therefore, in refusing to declare that the policy was void. With the "main" issue at rest, the "incidental" ones lead us into more troublesome areas.

Was there an anticipatory breach? What was the effect of it? What relief could be granted?

■ We start on solid ground in the Texas law for an anticipatory breach of an installment insurance contract is recognized. Universal Life & Accident Insurance Co. v. Sanders, 129 Tex. 344, 102 S.W.2d 405, 407 (Com.App. opinion adopted). Williams v. Mutual Benefit Health & Accident Ass'n, 5 Cir., 100 F.2d 264. A natural application of the principles announced in the landmark case of Pollack v. Pollack, 39 S.W.2d 853, 855 (Com.App. holding approved), 46 S.W.2d 292, 295, Sanders emphasizes that [129 Tex. 344, 102 S.W.2d 407] "It is not to be understood that we are extending the doctrine of anticipatory breach so as to make it applicable to cases where the insurer merely denies liability or claims defenses under the terms of the policy. The Pollack opinion limits its application to cases in which

the obligor absolutely repudiates the obligation without just excuse." It is not enough that contractual benefits are denied, their availability disputed, or a defense asserted which would have the practical effect of making the contractual arrangement henceforth of no real value.[7] To precipitate anticipatory breach, there must be a complete renunciation of the contract, a categorical claim that it never has been, or no longer is, valid and binding whatsoever.

■ The question at the outset then is whether the promisor refused to perform because such party denies that there is any contract, or the contract is invalid or otherwise without binding force or effect. If that occurs, there is repudiation which if accepted constitutes an anticipatory breach of the contract.[8]

■ In the conceptual terminology of contracts, it is a tender of a breach of the entire contract which, on acceptance, permits the other party to obtain damages as for a breach. " * * * Simply stated, the rule of anticipatory breach is founded on the theory that the repudiation of the contract by one of the parties to it before the time of performance has arrived amounts to a tender of a breach of the entire contract, and, if it is accepted by the other party, it constitutes what is known in law as an anticipatory breach of such contract as a whole, and in such event the injured party is at liberty to at once demand his damages for such breach, and, if

7. Where the promisor recognizes the contract as binding but denies a present obligation to perform, or to perform as claimed, there is no anticipatory breach: Sanders v. Aetna Life Ins. Co., 1947, 146 Tex. 169, 205 S.W.2d 43, 45, 173 A.L.R. 968. Such a decision by this Court is Driggers v. Business Men's Assurance Co., 5 Cir., 1952, 199 F.2d 911; American Bankers Ins. Co. v. Moore, Tex.Civ. App., 73 S.W.2d 620; National Life & Accident Ins. Co. v. Runnels, Tex.Civ. App., 227 S.W.2d 351; Englehart v. Volunteer State Life Ins. Co., Tex.Civ.App., 195 S.W.2d 798 (ref. n. r. e.); cf. Pennell v. United Ins. Co., 1951, 150 Tex. 541, 243 S.W.2d 572, 574, 577.

8. See, also, Burks v. Neutzler, Tex.Com. App.1928, 2 S.W.2d 416; Western Oil Sales Corp. v. Bliss & Wetherbee, Tex. Com.App., 299 S.W. 637; Southland Life Ins. Co. v. Gatewood, Tex.Civ.App.1938, 115 S.W.2d 723, approved and affirmed 135 Tex. 177, 141 S.W.2d 588, 590 (Com. App. opinion adopted); Pan American Life Ins. Co. v. Garrett, Tex.Civ.App., 199 S.W.2d 819; American National Ins. Co. v. Fox, Tex.Civ.App., 184 S.W.2d 937 (writ ref., w.m.); Commercial Travelers Casualty Co. v. Dymke, Tex.Civ. App., 279 S.W.2d 405; Williams v. Mutual Benefit, Health & Accident Association, (Tex.) 5 Cir., 100 F.2d 264; Needham v. American National Ins. Co., Tex.

necessary, begin an action therefor. The damages are to be ascertained as of date of the breach, but such damages are to be full compensation for the loss occasioned by depriving plaintiff of the benefit of the contract." Pollack v. Pollack, supra, 46 S.W.2d at page 293.

Here, the Trial Court, on a record which affords adequate support under the clearly erroneous test, found such a repudiation. After making weekly indemnity payments, the Insurer ceased sending further checks. Some time later, in June 1956, the Insurer's authorized agent in conference at the Assured's home declared orally what was confirmed by a contemporaneous letter[9] addressed and shown to him that because "of an unfavorable past health history which you apparently inadvertently omitted in * * * your application. * * * It is therefore necessary for us to rescind your policy * * *."

■ The language here was peremptory. To "rescind" is to put an end to a contract. While this was couched in terms of a willingness to afford the $50 plan D weekly coverage, it is uncontradicted that the agent formally demanded that the Assured surrender the $100 certificate in exchange for the $50 certificate as a substitute. Demanding the right to terminate the one and substitute another contract, the agent also represented that the Insurer had the right to do this under the Master Policy, a representation which the Court held to have been "false" and which certainly had no foundation in the contract. The trial also made clear that the offer of the plan D certificate was out of a sense of moral obligation or gentleman's agreement with the State Medical Association to supply minimum coverage to all applicants regardless of medical acceptability. But however couched, the demand was for the complete return and extinguishment of the only contract[10] which Dr. Klotz had—the plan B certificate issued to him. A willingness to grant him something else, a willingness to make a *new* contract did not ameliorate the decisive repudiation.

■ But repudiation alone is not the end of the matter. While the Insurer, neither in brief nor in the broad, but adequate, assignment[11] of error on the point makes the precise, specific contention we think that the theory of anticipatory breach fails because there is no supportable finding of an essential ingredient in it—acceptance of the breach by the Assured. Pollack speaks in terms of " * * * a tender of a breach of the entire contract, * * *

Civ.App., 97 S.W.2d 1016 (writ dismissed).

9. The letter dated June 19, 1956, discussed in the June conference and addressed to Dr. Klotz read:

"You will recall that in installing this program, the Company reserved the right to reduce the amount of weekly coverage applied for by members of the Association who were impaired risks.

"In the course of considering your claim, we have learned of an unfavorable past health history which you apparently inadvertently omitted in completing your application.

"Had the Company known of your past history of hypertension, you would have been limited to plan D. It is therefore necessary for us to rescind your policy.

"Because we had agreed to issue a minimum of $50.00 weekly coverage for all members * * * we offer you a $50.00 weekly policy effective January 18, 1956, to replace the $100.00 weekly contract which has been rescinded.

" * * * [here follows various calculations on indemnity payments to be repaid if the $50.00 policy were declined or on premium refunds] * * * if you elect to accept the $50.00 weekly coverage * * *."

"Sincerely yours,
R. J. Poblocki,
Claim Examiner."

10. Cf. Needham v. American National Ins. Co., Tex.Civ.App., 97 S.W.2d 1016 (writ dismissed).

11. "The Trial Court erred:

"3. In finding and concluding that Appellee is entitled to the present value of the policy and the statutory penalty and attorney's fees because there is no evidence, or there is insufficient evidence to establish an anticipatory breach of the policy."

**506**

[which] if * * * accepted by the other party, * * * constitutes * * * an anticipatory breach * * * and in such event the injured party is at liberty to at once demand his damages * * *."

■ The party not in default has alternative remedies open to him. He may not pursue all of them, and specifically he may not claim damages as for an anticipatory breach and at the same time treat the contract as in force. And " * * * his damages cannot be measured by rules which might be applicable had he based his conduct and his suit upon a different theory inconsistent with that upon which he sues." Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 485, 79 S.W. 1069, 1071, 65 L.R.A. 302; Wellington Railroad Committee v. Crawford, Tex. Com.App., 216 · S.W. 151; Kilgore v. Northwest Texas Baptist Educational Society, 90 Tex. 139, 37 S.W. 598, 600; 10 Tex.Juris, Contracts, §§ 262, 263, 264; National Life Co. v. Thomason, Tex.Civ.App., 160 S.W.2d 582; Protective Mutual Life Ins. Ass'n v. Duke, Tex.Civ.App., 91 S.W.2d 753.

There was, we have held, a repudiation. The Assured was entitled to, and perhaps did for awhile, consider that that had been done. But apart from a great sense of outrage and perhaps a natural feeling of frustration when the Insurer declined to make further payments, he then took no action. This did not forfeit the right at any time to accept the tendered breach still outstanding from the peremptory repudiation. But instead of doing any such thing, Dr. Klotz took action which was inconsistent with this theory. For, in a letter prepared by his very able counsel, he made formal demand for the performance of the contract and the payment of statutory penalties and attorney's fees. This letter [12] of August 4, 1956, reiterated the prior offer by the Assured to supply " * * * you any proof you reasonably desire and seasonably request" and then stated flatly that in view of the outright repudiation, the Assured " * * * has elected to mature the full indemnity and all installments under such certificates or policy." This was followed with a formal demand for the payment, not of damages, but of the weekly indemnity for a stated sum less discount.

In two respects, this was an assertion that the contract was still in full force and being and that performance of it was being sought.

■ First, while the damages to be awarded as for an anticipatory breach might be closely akin to the commuted present value, this theory did not give the Assured any right to elect "to mature the full indemnity and all installments under such certificate or policy." For, "The doctrine of anticipatory breach is

12. "Pursuant to the certificate of insurance issued by you to Dr. Harry Leslie Klotz * * * and further pursuant to the statutes * * * and the penalties * * *, including the 12% damages and * * * attorney's fees * * * in Article 3.62 of the Insurance Code * *, please be advised;

"Repeated demands have been made upon you for payment under this policy; * * *

"You have waived any further proof, if further proof was to be otherwise required, and have denied liability.

"You have tendered a substitute policy to Dr. Klotz wholly repudiating the certificate which he holds.

"You disclaim liability not on the terms of the policy itself * * * but you claim that the facts at the time of Dr.

Klotz's application were not such as to entitle him to a policy as applied for and as written.

"We now, and again, tender you any proof you reasonably desire and seasonably request.

"In view, however, of your outright repudiation without just cause or excuse, Dr. Klotz has elected to mature the full indemnity and all installments under such certificate or policy. He now, therefore, makes formal demand upon you for payment of the entire 520 weeks indemnity at $100 per week, less $400 previously paid by you prior to your repudiation of the policy. Such demand hereby made is therefore for the sum of $51,600.00, discounted to present value at such rate as the law requires."

not founded on the theory that it moves the performance ahead of the time provided in the contract, but on the theory that, when a party bound to perform under the contract repudiates it and denies his liability thereunder, he thereby wrongfully destroys the contract so far as he is able to do so, and is liable for damages for such wrongful act. * * *" Pollack v. Pollack, Tex.Com.App., 39 S.W.2d 853; Tex. Com.App., 46 S.W.2d 292, 293. We do not rest this narrowly on the mere choice of words, "mature the full indemnity" because its meaning was spelled out in the specific demand "for payment of the entire 520 weeks indemnity at $100.00 per week * * *."

Second to claim statutory [13] penalties and attorney's fees for failure to pay, after 30-day demand, "a loss" necessarily affirmed the continued existence of the contract of insurance and an assertion of its validity. The penalty comes only from failure to pay a "loss" under a policy of insurance.[14] If under Texas law a suit for damages as for an anticipatory breach is not a suit on the policy, there would be no basis [15] for allowing penalties. As to the major premise in this analysis the Texas law is positive that a claim for damages is not a suit

on the policy. National Life Co. v. Harvey, Tex.Civ.App., 159 S.W.2d 920, presented this precise point.[16]

The Court, at page 923, states that where the suit is for an anticipatory breach, it:

" * * * can not be 'a suit on the policy' for the simple reason that, by his act in accepting the repudiation, the policy was thereby rescinded, and thereafter had no legal existence. In view of this the courts of this and other States have quite correctly held, as stated above, that where the repudiation has been accepted by the insured and suit is instituted by him to recover damages, whether they consist of the premiums theretofore paid or the value of the policy at the time of its repudiation, it is not a suit on the policy * * *."

This same view is reflected by National Life Co. v. Thomason, Tex. Civ.App., 160 S.W.2d 582, 584, " * * * When a policy of insurance has been wrongfully cancelled and the insured sues at law for the recovery of damages, such action is not a suit on the policy."

Consequently the assertion of the demand for statutory penalties was con-

---

13. Tex. Insurance Code, Art. 3.62:

"In all cases where a loss occurs and the * * * life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay * * * in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. * * * The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy." Tex.Rev.Civ.Stat.Ann. (Vernon) Insurance Code, Art. 3.62.

14. Texas " * * * courts hold that the * * * article [3.62] is highly penal, that it must be strictly construed * *." Washington Fidelity Nat. Ins. Co. v. Williams, 49 S.W.2d 1093, 1094 (Com. App. opinion approved).

Penalties are not, for example, recoverable in a suit demanding payment in accordance with the policy terms of the cash surrender value. General American Life Ins. Co. v. Martin, Tex.Civ.App., 137 S.W.2d 139.

15. We do not regard American National Insurance Co. v. Fox, Tex.Civ.App., 184 S.W.2d 937 (writ refused w.m.), either to the contrary or compelling a contrary result. The Insurer did not question liability for penalties and attorney's fees; but contended merely that such penalties—fees should have been based on the amount of installments accrued and not on the future installments.

16. The immediate question under the Texas venue statute, Tex.Rev.Civ.Stat.Ann. (Vernon), Art. 1995, § 28, was whether a suit for damages measured by the present value at the time of the anticipatory breach was within the exception "Suits on policies" allowing the plaintiff to commence such an action in his home county.

sistent only with a theory of the continued vitality of the contract. It was inconsistent with the concept that the contract had earlier been put to an end by action of the Insurer with acceptance by the Assured.

We readily grant that these two circumstances, alone or together, were so equivocal that had the Trial Court treated them differently, it is not likely that we could have held such fact inferences clearly erroneous. But the short of the matter is that the District Court in the plainest of language arrived at this very same conclusion and found [17] categorically "that the insured by letter in writing made demand of the insurer that it recognize and perform the contract and that it pay in full the benefits provided for therein."

Nor was there anything done subsequent to this letter demand which enabled the assured to "revive" an option to accept the tendered breach (repudiation) of the Insurer. Nothing definitive was done during the 30-day waiting period apparently expiring September 7 and before any further step was taken by the Assured, the Insurer, on September 8, 1956, filed this complaint for declaratory judgment.

In the conceptual approach unavoidable in this character of problem, the effect of this was that the Insurer, before his tender of breach had been unequivocally accepted withdrew it. The Insurer was no longer persisting in the peremptory position taken by its agent in the June conference in which it positively declared the contract rescinded and demanded the return of the plan B certificate. Here, to be sure, it was still asserting that there had been fraudulent misrepresentation which would avoid the policy. But instead of resolving the dispute peremptorily by the power of its own self-help, it came into Court beseeching an orderly, objective judicial ascertainment of the right of the matter. It was in effect to inform the Court that the Insurer conscientiously believes the policy is void, but the Assured with equal conviction disputes this, and to resolve this controversy, a decision by a court is needed.

Where a party whose unaccepted anticipatory breach has been rejected impliedly by the continued assertion of an inconsistent claim of an existing valid contract, then promptly brings the matter to a court for declaratory resolution and decision, we would be loathe indeed to say that such resort to a court was itself a new anticipatory breach. Since it was not, the Assured could not make one out of it, and the cross claim [18] for damages could not mount to an "election" to accept the "new" anticipatory breach.

The result is that there was no basis for awarding as damages the commuted value of the future installments.

Since the action remained one on the contract of insurance, the statute, note 13, supra, prescribing penalties and attorney's fees does have general application. And under the Texas view of this public policy, we think that it has specific application to require some award for both. Unlike some other

---

17. Findings of fact:
 "20. I find that the insured by letter in writing made demand of the insurer that it recognize and perform the contract and that it pay in full the benefits provided for therein; that such demand was made more than 30 days prior to the filing of this suit, and that the insured refused to perform the contract, and asserted its invalidity because of alleged misrepresentations, and that the insurer has at all times since June, 1956, failed and refused to pay the benefits provided for therein."

18. Pace Corporation v. Jackson, Tex., 284 S.W.2d 340, is not to the contrary. There the initial anticipatory breach continued with no inconsistent action by the innocent party right up to the filing of the repudiating party's suit for declaratory judgment. In such circumstances, more nearly comparable to the situation here had the August 4 demand letter not been sent, the Texas Supreme Court allowed damages for anticipatory breach asserted by the counterclaim.

states, cf. Georgia Code, § 56–706; Hanover Fire Ins. Co. of New York v. Argo, 5 Cir., 251 F.2d 80, this is not a "just cause" or "reasonable cause" penalty statute. Where the 30-day demand has been made, the penalty is due if the Insurer is ultimately held liable on the policy no matter how justifiable was the basis for its unsuccessful defense of non-liability. It flows automatically from the failure to pay for " * * * no exception * * * has been grafted upon it, except where the insurance company is in doubt as to whom the money should be paid on account of conflicting claims; and then only when it acts * * * promptly and clearly, and promptly admits its liability and makes a bona fide tender of the full amount due." Boomer v. Massachusetts Bonding & Insurance Co., Tex.Civ.App., 148 S.W.2d 945, 949, (error dismissed). "No question as to the good faith of a defense to the policy can be interposed to prevent collection of the penalties * * *." New York Life Insurance Co. v. Veith, Tex.Civ.App., 192 S.W. 605, 606.

█ When it comes to fixing the amount, it is clear that the 12% penalty can attach only to those payments accrued and in default. As to those due in the future, obviously there can have been no failure to pay and the penalties " * * * should not extend to the entire amount of the policy, but should be only upon that part of it that was not paid." Franklin Insurance Co. v. Villeneuve, 25 Tex.Civ.App. 356, 60 S.W. 1014, 1016; Flatonia State Bank v. Southwestern Life Insurance Co., 133 Tex. 243, 127 S.W.2d 188, 128 S.W.2d 790 (Com.App. opinion adopted).

█ Attorney's fees, on the other hand, are treated differently. The Statute, note 13, supra, makes a distinction between fees and penalties and as to fees requires the court to " * * * take into consideration all benefits * * * accrued and to accrue * * *." Therefore, the fees allowed are to be based not alone on the recovery then adjudged, but by the total probable benefits ultimately involved. American National Insurance Co. v. Jones, Tex.Civ.App., 83 S.W.2d 428 (writ ref'd); Metropolitan Life Insurance Co. v. Green, Tex. Civ.App., 102 S.W.2d 1090 (writ dism'd). Obviously there was here involved more than the accrued weekly payments then in default. If the Insurer prevailed, this would have destroyed a contract having a potential value of many thousands of dollars. If, as did happen, the Assured was successful, this established a right to payment of substantial sums throughout the next ten years as long as Dr. Klotz remained totally disabled within the terms of the policy. The amount fixed by the District Court ($3,500) should therefore remain.

The relief granted should have been a suitable declaration that the policy was valid and in force with the Assured entitled to recover indemnity payments and other benefits in the future in accordance with the terms of the contract, and a money judgment on the cross claim for the accrued installments with 12% statutory penalties on such amount, and attorney's fees in the amount previously fixed. The result is that the judgment is reversed and the matter remanded to the District Court for further and not inconsistent proceedings.

Reversed and remanded.