**CONTINENTAL CASUALTY COMPANY,**
Appellant,

v.

**Walter Earl VAUGHN, Appellee.**

No. 14874.

Court of Civil Appeals of Texas.

Houston.

Oct. 20, 1966.

Rehearing Denied Nov. 10, 1966.

The Kempers, Houston, T. M. Kemper, Houston, of counsel, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Dale Harvill, Frank T. Abraham, W. James Kronzer, Houston, for appellee.

WERLEIN, Justice.

Appellee sued his insurance carrier to recover damages for an anticipatory breach of an accident insurance policy. The policy provides for the payment of monthly indemnity for loss resulting from injury, in the sum of $100.00 for total disability for the maximum period of the insured's life. It defines "injury" to mean "bodily injury caused by an accident * * * and resulting directly and independently of all other causes * * *"

The jury found in answer to special issues submitted with proper definitions, that on or about March 30, 1962, appellee, Walter Earl Vaughn, sustained bodily injury caused by an accident and resulting directly and independently of all other causes; that such total disability was permanent; that appellant's denial of liability to appellee was made without just excuse; that $29,-200.00, if paid now in cash, would be fair and reasonable damages for appellee to recover; and that $8,850.00 was a fair and reasonable attorney's fee. The trial court found that the amount of principal damages in the sum of $29,200.00 should as a matter of law be reduced and discounted down to the sum of $14,246.00. The court then entered judgment for appellee in the sum of $28,385.00, which included said discounted amount, plus the amount awarded for attorney's fees, 12% penalty on 43 past due accrued monthly installments and 6% interest thereon, and 43 monthly installments totalling $4,300.00. Appellant has perfected its appeal. Appellee has appealed only from the action of the court in discounting the amount of damages found for him by the jury.

■ The first question for our consideration is whether appellee has pleaded and made out a case for an anticipatory breach by appellant of its contract of insurance. It is appellant's contention that appellee's disability was not caused by an accident and that its denial of liability and refusal to pay anything whatever, past or future, based upon such contention does not con-

stitute a repudiation of the insurance contract sufficient to entitle the insured to seek his damages. The jury found that appellant's denial of liability to appellee was made without just excuse. The court defined "just excuse" as meaning a reasonable basis for the denial of liability in the light of the claim and proof of loss then existing to Continental Casualty Company, and such an excuse as could be reasonably given by an insurer under the facts and circumstances then existing. Appellee takes the position that where there has been a total and arbitrary rejection of liability not based on just cause, and the circumstances indicate that no proof would satisfy the insurer, and that no further clarification could be made, there has been a renunciation or repudiation sufficient to support a cause of action for anticipatory breach.

It is our view that there is ample evidence to support the jury's finding that appellant's denial of liability was made without just excuse. The evidence shows that on April 10, 1962, appellee wrote appellant a letter stating that he had sustained a back injury on March 30, 1962, and that he was in Leggett Memorial Hospital in Cleveland, Texas, and did not know how long he would be hospitalized or unable to work. Appellant sent appellee its standard preliminary claim form, which appellee returned, reporting that he had "a back injury in the nature of a ruptured disc that occurred on March 30, 1962 while loading a load of tubing on a truck in Houston." The same report contained a statement by appellee's doctor, Dr. W. L. Barnett, to the effect that appellee had a ruptured intervertebral disc between Lumbar 4 and Lumbar 5; that the accident occurred on March 30, 1962; that appellee first consulted the doctor on April 1, 1962; and that appellee was to have a spinal fusion. After receiving the preliminary claim form on May 22, 1962, appellant sent appellee one month's indemnity and a thirty days' hospital indemnity. Appellant sent appellee a supplementary claim form which he returned on June 4, 1962. It also had a doctor's statement attached to it. As a result of the supplemental statement appellant sent appellee an additional monthly disability benefit.

Appellant then sent an inquiry to Leggett Memorial Hospital to examine the record as prepared during appellee's confinement beginning April 1, 1962. In response thereto appellant received a history stating "patient was lifting a joint of pipe and felt sudden pain in lower back with radiation to left leg." Following the receipt of such communication a request was made to appellee "for a detailed description of the circumstances surrounding the incident." Appellee's return report was that he was injured "while unloading my truck with a load of tubing. I picked up a joint of tubing, rupturing a disc in my back. It happened about 4 p. m."

Appellant did not question at any time that appellee had a back injury. Its question was "Was it an accidental injury?" Its definition of "injury" according to its representative was "an abnormal, localized condition of the body that is not caused by an existing illness or disease process"; whereas the policy defines "injury" as a "bodily injury caused by an accident and resulting directly and independently of all other causes, in loss * * *"

On July 13, 1962, a representative of appellant wrote appellee explaining that his description of how his disability occurred indicated that such disability was not the result of an accident, and that benefits were, therefore, not payable. Thus, appellant denied liability on the basis that what had happened to appellee could not be considered an accident. Appellant's representative testified that appellee's description of how the accident occurred was the basis of appellant denying liability. It not only denied liability but asked that the benefits previously paid be refunded. Appellant took the position that appellee's bodily disability was not caused by an accident, and this was still the position of the company at the time of the trial. Appellant's representative testified that he doubted that

the testimony of five eminent physicians declaring the occurrence in question to be an accident would have much effect on the company. In this connection it should be noted that appellee's medical witness, Dr. David, testified that as a result of the accident appellee sustained a ruptured disc and possibly some other pathology. Dr. Donovan, who examined appellee for appellant, testified by deposition that in his opinion appellee's disability was caused by the accident in question independently of all other causes. At the trial he testified that that was still his opinion. Appellant's final position was that the incident or the manner in which appellee described what happened to him was not and could not be considered an accident. Said representative testified that appellee did what he intended to do when he picked up the piece of pipe and that nothing untoward happened to him, that is, "nothing accidental as far as the description we were given could be considered an accident."

It seems obvious that appellant took the position that the occurrence in question was not an accident since appellee in lifting the pipe was doing what he intended to do, and hence any bodily injury sustained by him was not the result of an accident. After receiving appellant's letter of July 13, 1962, denying liability, appellee wrote a letter to appellant on July 20 stating that he "would like to know why my accident was not for bodily injury." To such letter appellant replied on August 3, 1962, as follows:

"Your policy defines injury as 'bodily injury caused by an accident occurring while this policy is in force and resulting directly and independently of all other causes.'

"Mr. Vaughn, your description of how your disability occurred as well as other correspondence we have received indicates that your disability was not the result of an accident as defined by your policy. Therefore, the $500 which you have received was paid in error.

"We are sure you will agree that it is in the best interests of the B. F. Walker Company, this Company, and your own integrity to return this money as soon as possible. Your money order or check in the amount of $500 should be made out to the Continental Casualty Company and sent directly to this office.

"Your prompt cooperation will enable us to clear up this matter with a minimum difficulty. May we expect to hear from you within the next ten days?"

In Pollack v. Pollack, Tex.Com.App.1931, 39 S.W.2d 853, which involved repudiation of a contract providing for monthly payments and a specified amount in case the purchaser of property died before the seller, the Court said:

"In this connection we hold that Henry, having not only failed and refused to meet the monthly payments due on the contract, but, on the other hand, having absolutely repudiated the obligation, all without just excuse, has breached the contract, and therefore Charles is entitled to maintain his action in damages at once for the entire breach, and is entitled in one suit to receive in damages the present value of all that he would have received if the contract had been performed, and he is not compelled to resort to repeated suits to recover the monthly payments. (Citing authorities)"

In the case of Universal Life & Accident Insurance Co. v. Sanders, Tex.Com. App.1937, opinion adopted, 129 Tex. 344, 102 S.W.2d 405, the Court held that the petition contained sufficient allegations of an anticipatory breach. The petition alleged that plaintiff was totally and permanently disabled, that she had on numerous occasions so advised the agent of the insurer, and that the agent and the company had continually refused to furnish her proofs of loss and that the company denied all liability under the policy in question. See also opinion of the Court

of Civil Appeals, 74 S.W.2d 301. The Supreme Court used the following language:

"It is further argued that in the Pollack Case it was alleged and proved that the obligor had absolutely repudiated his obligation without just cause, whereas there are not comparable allegations in the petition in the instant case. The allegations of the petition in this regard are not altogether satisfactory. Some of them would indicate that the defendant breached, but did not repudiate, its contract. However, when tested by a general demurrer only, it cannot be said that they do not charge that defendant completely and absolutely repudiated its obligation without excuse. If it did so, no reason is perceived why the rule announced in the Pollack Case should not be applicable in the instant case."

The Sanders case stands for the proposition that there can be no recovery of anticipatory damages where the defendant has merely breached but has not repudiated its contractual obligations. The Court said that if the defendant completely and absolutely repudiates its obligation under the contract, " * * * no reason is perceived why the rule announced in the Pollack Case should not be applicable in the instant case." The Court further stated:

"It is not to be understood that we are extending the doctrine of anticipatory breach so as to make it applicable to cases where the insurer merely denies liability or claims defenses under the terms of the policy. The Pollack opinions limit its application to cases in which the obligor absolutely repudiates the obligation without just excuse."

In the present case appellee pleaded in substance that the appellant refused to make any further payments on the ground that the injury received by appellee was not "accidental"; that to conclude that lifting a pipe causing a ruptured disc in the claimants' back was "intentional" was and is completely unfounded; that such contention was, and is, unreasonable and unjust under the fact of the case and does not constitute a bona fide dispute as to the coverage of the policy, but it is such an arbitrary position that it constitutes a repudiation of the contract itself and amounts to a breach of the entire contract; and that the declaration of the unreasonable position taken by appellant constitutes an unconditional refusal of appellant to perform under the contract as made, and that by appellant's repudiation of the contract without reason or just excuse, appellee has been damaged in the sum of $28,-680.00. It is our view that appellee pleaded a good cause of action for anticipatory breach consisting of the absolute repudiation by appellant of its obligation under the contract without just excuse.

Appellant undertakes in its brief to draw a distinction between a breach of the contract, which it concedes and a repudiation which it denies. It is our view that in the present case there was more than a mere breach of the contract by appellant. Its position was and is that it has no obligation to pay appellee anything whatever under the policy on the ground that the incident in question and the bodily injury to appellee was not an accident. Its denial was not based upon a mere difference as to the nature and extent of appellee's incapacity, but was a total and arbitrary rejection of plaintiff's claim, not based on just cause or excuse. The facts and circumstances of the case indicate that no proof would satisfy appellant, and that no further clarification could be made, thus establishing a renunciation of its obligation sufficient to support a cause of action for anticipatory breach. The repudiation of its obligation to appellee consists of words and actions that indicate that appellant was not going to perform its contract in the future with respect to its obligation to make payments to appellee, and that it would be utterly useless for appellee to insist upon such payments. Under these circumstances appellee should not be driven to the necessity of filing suits periodically for the recovery of future payments as

they matured. See Continental Casualty Co. v. Boerger, Tex.Civ.App., 389 S.W.2d 566, writ dism., and authorities cited.

In Rapid Transit Lines, Inc. v. Transit Ads, Inc., Tex.Civ.App., 401 S.W.2d 276, the Eastland Court stated:

"Rapid pleaded that it had no legal obligation to honor the Transit Ad contract. Its president testified distinctly and unequivocally that the contract was not binding on his company. The record reveals that Rapid did not recognize and refused to perform under the agreement. The foregoing and other facts and circumstances in evidence established an anticipatory breach of the contract. Pollack v. Pollack (Com.App.), 46 S.W.2d 292; Continental Casualty Company v. Boerger, Tex. Civ.App., 389 S.W.2d 566 (writ dismissed)."

In the present case there was more than a mere assertion by appellant of legitimate defenses and denial of liability under the policy based upon reasonable grounds or a difference of opinion or upon a conflict in the evidence as to whether appellee sustained an accidental injury. Here the denial of liability was utterly untenable and arbitrary, and based upon no evidence whatever, and, as the jury found, without just excuse. It is true that in its letter of August 28, 1962 addressed to appellee's attorney, appellant stated that it had a hospital report which showed that appellee had a "congenital variation of lumbo sacral joint." This defect, if it existed, was, as stated in appellant's letter, "in evidence since birth." There was and is no medical or hospital statement or evidence that such congenital defect contributed in any way to appellee's accidental injury. The only obligation of appellant under the policy that had ripened into full fruition was its obligation to make the payments as it contracted to do. When it repudiated that contractual obligation without just cause or excuse, it repudiated its contract to all practicable purposes. Its repudiation was not equivocal but, as all the evidence shows, it was a fixed, final and unquali-

fied disclaimer of all liability, even to the point of insisting that appellee return the payments he had received, thus manifesting an adamant denial of all liability upon the wholly untenable ground that appellee had not sustained a bodily injury caused by accident.

Appellant's unqualified denial of liability under the policy, both as to matured payments and as to unmatured payments, constituted an entire repudiation of its contractual obligation as distinguished from a mere failure or refusal to pay the matured installments. See American Casualty & Life Co. v. McCuistion, 1947, 202 S.W.2d 474, writ ref., n. r. e.; Commercial Travelers Casualty Co. v. Dymke, Tex. Civ.App.1955, 279 S.W.2d 405. See also Needham v. American National Insurance Company, 1936, 97 S.W.2d 1016, writ dism., where the Dallas Court of Civil Appeals held that the following summary of testimony of Needham amounted to a repudiation of the policy: "After appellant was informed that any further effort on his part to establish, by any proof appellee would suggest or demand, his total and permanent disability, would be a 'waste of time,' and that this clause of his policy was canceled, this suit was instituted." It is our view that the evidence in the instant case was sufficient to authorize the maintenance of this suit as and for an anticipatory breach and the recovery of damages measured by the present value of the unmatured installments that would become due but for such repudiation.

The parties stipulated that the average life expectancy of a man 53 years of age was 20.8 years. Appellant objected to the admissibility of such stipulation on the ground that it was wholly irrelevant and immaterial in a suit on an accident insurance policy, the question being whether the claimant's total disability, if any, would continue during his life expectancy. In the stipulation it was stated: " * * * the parties are not stipulating that the Plaintiff, Walter Earl Vaughn, himself

would necessarily live that long, nor are they stipulating that he could not live longer, but this stipulation represents an agreement as to the average remaining life expectancy of a man of the above-stated age."

In the case of Universal Life & Accident Insurance Co. v. Sanders, supra, it was shown that the insured had become "permanently paralyzed" and that such condition would continue "permanently and totally through the period of her natural life." Thus, there was every reason to believe that the life expectancy of the claimant had been shortened. In such case mortality tables would not furnish a reasonable evidentiary guide line as to probable or possible expectancy. On the other hand, there is no suggestion in the record in the present case that Vaughn's life expectancy would be shortened as a result of the injury he had sustained. His bodily injury had removed him from all manual labor and industrial work and the danger of injury incident thereto. Hence, his life expectancy would in all probability be increased beyond the normal life span of persons of similar age. The stipulation merely informed the jury of the usual life expectancy of a person of appellee's age. It was some evidence which the jury might consider, but the jury was not bound to measure the life span of appellee by mortality tables. Texas Consolidated Transportation Co. v. Eubanks, Tex.Civ.App., 340 S.W.2d 830, writ ref., n. r. e. Furthermore, the objection to the admissibility of the life expectancy stipulation in fact showed its relevancy since as appellant's objection points out, the question was whether appellee's disability would continue during "his life expectancy." We are of the opinion that appellant has failed to show that the admission of such stipulation was reversible error or that it was reasonably calculated to cause and probably did cause the rendition of an improper verdict. Gulf, Colorado & Santa Fe Ry. Co. v. Hampton, 1962, 358 S.W.2d 690, writ ref., n. r. e.; Panhandle & Santa Fe Ry.

Co. v. Dean, 269 S.W.2d 439, writ ref., n. r. e.; Rule 434, Texas Rules of Civil Procedure.

Appellant's fifth point, complaining that the court erred in submitting Special Issue No. 3 concerning permanent disability since an affirmative finding thereto would be against the greater weight and preponderance of the evidence, is clearly a no evidence assignment. McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.1964, 380 S.W.2d 545, 548; Garza v. Alviar, Tex.Sup.1965, 395 S.W.2d 821; Solgaard v. Texas & N. O. R. Co., 1950, 149 Tex. 181, 229 S.W.2d 777, 780; Calvert, 38 Texas Law Review 361. In briefing such point appellant has recognized that there was some evidence which warranted the submission of such issue in that it wholly failed to present or assign in its brief any no evidence contentions. Although not required to do so, we have read the entire statement of facts and examined all the exhibits and have concluded there was an abundance of evidence warranting submission of such issue. Furthermore, in considering all of the evidence, both that favorable to the jury's finding of permanent disability and that militating against such finding, we have concluded that such finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In Re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.

Appellant's sixth, seventh and eighth points of error have been carefully considered and the same are overruled. What has been said hereinabove sufficiently covers such points. Appellant's last last point is that the court erred in entering judgment for attorney's fees excessive in amount since in part based upon an anticipatory breach. Under this point appellant cites Pennell v. United Insurance Co., 150 Tex. 541, 243 S.W.2d 572. The present case is distinguishable from the Pennell case, which was an action brought on a health and accident insurance policy

to recover monthly disability benefits plus double indemnity benefits. It was not a suit to recover damages for an anticipatory breach of a contract. The court held that installments not yet due should not be considered in measuring attorney's fees. There was ample evidence in the instant case to support the amount of attorney's fees found by the jury. Indeed, appellant does not contend that the fee in question would be excessive if appellee sustains his position that there has been an "anticipatory breach". Furthermore, appellant and appellee entered into a stipulation which reads in part as follows:

"By making this stipulation, it is understood that the Defendant * * * preserves its contention, that the Plaintiff is not entitled to recover, if at all, more than the past, accrued, and matured monthly installments provided by the insurance policy in question, *plus the reasonable attorney's fee found by the jury* and a 12% penalty on the total amount of all such past due and accrued monthly installments." (Emphasis ours)

As hereinabove stated, the trial court found that the principal damages in the sum of $29,200.00 found by the jury should be reduced and discounted down to the sum of $14,246.00. The damage issue submitted to the jury reads as follows:

"What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would be the fair and reasonable damages, if any, recoverable by WALTER EARL VAUGHN, using as the basis for such finding, the benefits provided by the insurance policy in question at the rate of One Hundred Dollars ($100) per month during the existence of such total disability, if any, as you have found he has sustained in the past and will in reasonable probability sustain in the future?"

Appellee has appealed from the order of the trial court reducing the verdict of the jury and discounting the award of the jury at the rate of 6% per annum for 20.8 years.

Appellee moved for a new trial upon the ground that such further and additional reduction was improper, and that "The amount of reduction should have been and is in law solely within the province of the Jury under such circumstances."

A suit by an insured to collect prospective or future damages because of an anticipatory breach of an insurance policy is not a suit upon a contract but a suit at law for damages for the breach. Lumberman's Mutual Casualty Co. v. Klotz, 5th Cir., 251 F.2d 499; Universal Life & Accident Ins. Co. v. Shaw, 1922, 139 Tex. 434, 163 S.W.2d 376. The law is well settled in Texas that in most suits for damages the instruction in the damage issue "if paid now in cash" is sufficient to direct the attention of the jury to the element of present value. Houston Belt & Terminal Ry. Co. v. Davis, 1929, Tex.Civ.App., 19 S.W.2d 77, writ ref. The general rule is that the extent to which a jury actually discounts the "damages" is peculiarly within the province of the jury. Texas Consolidated Transportation Co. v. Eubanks, supra; Texas & New Orleans Railroad Co. v. Flowers, Tex.Civ. App.1960, 336 S.W.2d 907.

Appellant did not object or except to the wording of said damage issue, nor did appellant at any time request any further instructions by the court in connection with such issue or suggest to the court that said issue did not correctly provide for a discount basis for present value, nor did it tender any additional explanatory instruction or definition, nor did appellant in its motion for new trial raise the question of any additional discount. In its brief appellant cites the case of Pollack v. Pollack, Tex.Com.App.1931, 39 S.W.2d 853, wherein monthly installments were due for 11.67 years based upon the life expectancy of Henry, the paying party. In that case the court said:

"Charles should have recovered judgment against Henry for the present worth at the time of judgment, June 5, 1928, of the

$100,000 which Henry's estate will owe Charles at the time of Henry's death, which time is 11.67 years from the date of judgment. In computing the present worth at the time of judgment of such $100,000, same should have been discounted to its present worth at the time of judgment at 6 per cent interest per annum."

 The Pollack case is factually distinguishable from the instant case. In the present case the jury was instructed in the wording of the special issue to reduce the damages to present value. In the Pollack case the effort was to determine how a recovery could be made by use of expectancy tables, and to compute the present worth of the payment of the certain sum of $100,000 which Henry's estate would owe Charles at the time of Henry's death, which time was established at a definite 11.67 years from the date of judgment. Whereas in the present case there is no definite time designated. It was up to the jury to find a sum which if paid now in cash would compensate appellee for his total disability which the jury found was permanent and hence for the duration of appellee's life.

 Appellant contends that the jury's determination of $29,200.00 was based upon their computation of the life expectancy of Vaughn, and that no reduction was in fact made. This is pure conjecture and speculation on the part of appellant, and especially so since the aforesaid stipulation clearly stated that "the parties are not stipulating that the plaintiff, Walter Earl Vaughn, himself would necessarily live that long, nor are they stipulating that he could not live longer * * *" Furthermore, as stated hereinabove, appellant made no objection of such nature either before or after the jury's verdict. In the absence of appropriate objections and exceptions it may be assumed that the jury may have concluded that appellee had a longer life expectancy than the average, and that the amount which they found was based upon such longer life expectancy.

In his motion to enter judgment filed January 31, 1966, appellee voluntarily agreed to reduce the principal amount of damages found by the jury in the sum of $29,200.00 to $28,680.00 and to remit the difference between such amounts in order to conform the principal amount of damages to the amount alleged in his petition. The judgment of the trial court is modified so as to restore to appellee the amount deducted as discount from the sum of $29,-200.00 less the sum of $520.00 remitted by appellee, and, as modified, affirmed.

Judgment as modified, affirmed.