The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellants,

v.

James H. SHEPPARD, Jr. et al., Appellees.

No. 4285.

Court of Civil Appeals of Texas.

Eastland.

Oct. 10, 1969.

Rehearing Denied Oct. 31, 1969.

Hudson, Keltner, Smith & Cunningham, Joe B. Cunningham, Ft. Worth, R. R. Holloway, Holloway & Slagle, Brownwood, for appellants.

George A. Day, Brownwood, Webb, Stokes & Bolding, Tom Webb, San Angelo, for appellees.

COLLINGS, Justice.

This suit was brought by James H. Sheppard, Jr., individually and as next friend for John Rogers Sheppard, a minor, against The Atchison, Topeka and Santa Fe Rail-

way Company and its employee, Walter Robeson. Plaintiffs sought to recover damages for personal injuries sustained by the minor plaintiff in an intersection collision between a truck belonging to the defendant railway company driven by Robeson and a motorcycle upon which the minor plaintiff was a passenger and which was driven by Ronald Allen Campbell, also a minor. The case was tried before a jury and based upon the verdict, judgment was rendered in favor of the minor plaintiff for $81,000.00 and in favor of James H. Sheppard, Jr., individually, in the amount of $6,000.00 and for costs. The defendants have appealed.

The answers of the jury to special issues numbers 22(a), 22(b) and 22(c) were findings of damages upon which the judgment is based. In answer to such issues the jury found that 22(a) $11,000.00 would compensate John Rogers Sheppard for the mental anguish suffered by him from the time of the accident to the date of the trial, 22(b) that $20,000.00 would compensate him for the mental anguish he would in all probability suffer in the future, and 22(c) $50,000.00 would compensate him for the loss of earning capacity he would sustain in the future. In appellants' first point it is contended that the court erred in overruling their motion for a new trial because the evidence shows that the jury was guilty of misconduct in that they returned a quotient verdict in response to such issues. Appellees contend that there was no jury misconduct in the averaging process engaged in by the jury because it was not in furtherance of any agreement to be bound by the results but, to the contrary, was done for the purpose of getting a starting point for deliberation. Appellees further assert that even if it be assumed for the sake of argument that there was a quotient verdict, the same would have been a harmless error under the record in this case.

The record shows that on the hearing of the motion for a new trial nine of the twelve jurors testified concerning the alleged misconduct. Their testimony is summarized as follows: All nine of the jurors who testified stated that in their deliberations regarding the damage issues they used a procedure whereby each juror would write down or turn in a figure as to what he thought the answer should be to each issue, that such amounts were added together and the total divided by twelve so as to give a resulting average figure; and that such procedure was followed in respect to each of the three damage issues in question. The testimony does not reflect that there was any dispute with respect to the fact that such procedure occurred. However, the testimony is in conflict with regard to whether or not there was an advance understanding or agreement by the jurors that the resulting figure would be binding upon them. Six of the jurors testified that there was no agreement to be bound by the result of the averaging process, and that such process was done for the sole purpose of arriving at a working figure for discussion. The testimony of one of the jurors was equivocal in that, depending upon the questioner, it varied concerning whether there was an agreement before the averaging process that the averages arrived at would or would not constitute the answers to parts a, b and c of special issue number twenty-two. Two of the jurors, who signed the affidavit for the defendants, testified unequivocally that there was such an agreement and that they felt bound by and acted upon such agreement.

In 57 Tex.Jur.2d at pages 33 and 34 is found the following statement concerning the rule of law applicable to alleged quotient verdicts:

"It is improper for jurors to agree either expressly or by implication, to assess damages—in terms of the result reached by adding the amounts favored by each juror and dividing the total by the number of jurors. A verdict arrived at by this method is known as a quotient verdict, and, as such, it is invalid."

"The method of computation described may be resorted to, however, where the figure arrived at is meant to serve only as a basis for further discussion, and the jurors have not agreed to be bound by the result. This is true even though the average figure is subsequently agreed on as the amount recoverable or as the punishment to be imposed."

In State of Texas v. Wair, 163 Tex. 69, 351 S.W.2d 878, (1961), it is stated as follows:

"The trial court's refusal to grant a new trial upon an express or implied finding of no occurrence of jury misconduct is ordinarily binding on the reviewing courts and will be reversed only where a clear abuse of discretion is shown."

■ In Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.Ct., 1965), it was held that a trial judge's implied finding that jury misconduct did not occur was binding on appeal where the testimony was conflicting on the grounds of jury misconduct alleged in the motion for new trial. As shown by the evidence, as heretofore summarized, there was a conflict in the testimony of the jurors concerning the question of whether there was an advance agreement between them to be bound by the result of the averaging process. The implied finding of the trial judge that such misconduct did not occur is binding upon us. See also Barrington et al. v. Duncan et al., 140 Tex. 510, 169 S.W.2d 462, 1943; City of Denison v. Jennings Furniture Co., 424 S.W.2d 716, (CCA, 1968, n. r. e.). Appellants' first point is overruled.

In appellants' pleadings there were allegations of contributory negligence on the part of appellee John Rogers Sheppard in failing to protest to Ronald Allen Campbell concerning the speed at which the motorcycle was being operated immediately prior to the collision. In appellants' second and third points it is urged that the court

erred in refusing to submit to the jury their requested special issues numbers two and eight. Appellants' requested special issue number two contained four corollary issues as follows:

"(a) Do you find from a preponderance of the evidence that John Rogers Sheppard failed to protest to Ronald Allen Campbell concerning the speed at which the motorcycle was being operated immediately prior to the collision in question?

(b) Do you find from a preponderance of the evidence that a protest of the speed at which the motorcycle was being operated could have been made by John Rogers Sheppard in time for the driver, Ronald Allen Campbell, in the exercise of ordinary care, to avoid the collision in question?

(c) Do you find from a preponderance of the evidence that such motorcycle was being driven at such a speed as to cause John Rogers Sheppard as a passenger, in the exercise of ordinary care, to protest such speed to Ronald Allen Campbell?

(d) Do you find from a preponderance of the evidence that the failure, if any, of John Rogers Sheppard to protest the speed at which the motorcycle was being driven was a proximate cause of the accident in question?"

Appellants' requested issue number eight was identical to issue number two except that subdivision (c) inquired as to whether the failure to protest was negligence.

■ It is not disputed that there was evidence raising an issue of fact on the question of whether Ronald Allen Campbell, the driver of the motorcycle, was guilty of negligence by reason of the speed at which he was operating the vehicle. Appellants contend that it is well settled that a passenger in a vehicle has a duty to exercise reasonable care to avoid injury and that this includes the duty to protest

against an excessive rate of speed of the vehicle in which he is riding. Appellants' statement of the rule is correct when the facts are such that the rule is applicable. The rule is stated and discussed in Restatement of the Law Torts 2d, Section 495 at pages 556 and 557 as follows:

"A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff has been negligent in failing to control the conduct of such person."

"b. The plaintiff is barred from recovery against a negligent defendant if he fails to utilize with reasonable care an opportunity to exercise his ability to control the conduct of a third person irrespective of whether he is or is not under a duty to others to control the conduct of the third person, as to which see §§ 315–320. In this particular, the actor as plaintiff is required to do more to secure his own safety than he is required to do to secure the safety of others.

c. CARE REQUIRED OF GUEST OR PASSENGER IN AUTOMOBILE. Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so. —Save under such exceptional circumstances, a plaintiff is entitled to trust the vigilance and skill of his driver unless he knows from past experience, or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless. So too, the plaintiff is not required to keep his eyes constantly on the speedometer to see whether the driver is exceeding the legal speed limit, but he is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character.

d. In order to bar the plaintiff from recovery under the rule stated in this Section, it is necessary that the plaintiff know or should know that it is essential for his safety to control the conduct of the third person. A plaintiff may know what the third person is doing, but may have no reason to realize that it is necessary for him to intervene.—

e. The plaintiff's ability to control the third person's conduct, and the existence of circumstances which should lead him as a reasonable man to believe that his efforts to do so would be effective, are prerequisites to the application of the rule stated in this Section."

It is our opinion that under the rule as above set out there is no evidence of probative force that appellee John Sheppard, the fourteen year old passenger, had a duty to warn or to protest to Campbell, the driver of the motorcycle, concerning excessive speed or any continuous act of negligence on the part of such driver. There was evidence that Campbell was operating at an excessive rate of speed; that the speed limit at the point of the collision was thirty miles per hour, and that Campbell was driving at a speed of anywhere from 25 to 35 miles per hour. There was no evidence, however, that John Sheppard had actual notice of such speed. Actually, the evidence is undisputed that it was impossible for Sheppard to see the speedometer because his view was limited to the driver's back.

There was no other evidence from which it could be inferred that John Sheppard knew that the motorcycle was being operated at an excessive speed at the time of the accident. It is held that a passenger is required to call the attention of a driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character. Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526 (1940). The highest estimate of the speed of the motorcycle, which

was only five or slightly more miles per hour above the speed limit, does not raise an issue of excessive speed such as to constitute constructive notice of the excessive speed to a reasonable fourteen year old passenger so as to require him to warn or to protest to the driver, particularly when such passenger could not see the speedometer. The record is silent as to any experience on the part of appellee John Sheppard as a driver. The only evidence of any excessive speed of the motorcycle was of a slight excessiveness and even this was limited in time to a point within less than 100 feet from the point of the collision. There was no evidence of any knowledge on the part of Sheppard of any continuous or habitual speeding misconduct by Campbell. Actually there was no evidence that Campbell was an habitual driver at excessive speed. There was no evidence of any exceptional circumstances which would raise the duty on the part of appellee John Sheppard to warn or protest to Campbell concerning any excessive speed. The court, therefore, did not err in refusing to submit to the jury appellants' requested special issues numbers 2 and 8. The evidence considered in its most favorable light to appellants does not warrant the submission of such issues. Dudley v. Whatley, 400 S.W.2d 773, (Ct.Civ.App., 1966, ref. n. r. e.); Edmondson v. Keller, 376 S.W.2d page 5 (Ct.Civ.App., 1964, ref. n. r. e.); International-Great Northern R. Co. v. Lucas, 123 S.W.2d 760 (Ct.Civ.App., 1938, writ ref.). Appellants' 2nd and 3rd points are overruled.

■ As heretofore noted special issue number 22 was the damage issue and inquired concerning the sum of money which "if paid in cash" would reasonably compensate appellee John Sheppard for his damages. In connection with part (c) of such issue concerning loss of earning capacity in the future appellants requested the trial court to instruct the jury as follows:

"You are instructed that in your consideration of any future loss of earnings, if any, you should consider only the present value thereof, and in determining the present value thereof, you should take into consideration the highest rate of interest at which money can be safely and securely invested and determine the present value of any amount you may so allow by discounting the same or deducting therefrom annually an amount equal to the highest rate of interest at which such sum could be safely and securely invested during the period for which you may allow such damages and make the balance your answer."

In appellants' 4th point it is contended that the court erred in refusing to instruct the jury in accordance with the above requested explanatory instruction. The point is not well taken and is overruled. The requirement for such an instruction as here requested by appellants is limited to cases under the Federal Employers Liability Act. The well settled rule in other suits for damages is that an issue inquiring what amount of money "if paid now in cash" would reasonably compensate a plaintiff for his damages is sufficient to direct the attention of the jury to the element of present value and that explanatory instructions would serve no purpose but rather would tend to confuse the jury. Houston Belt & Terminal Ry. Co. v. Davis, 19 S.W.2d 77 (Ct.Civ.App., 1929, writ ref.); Bull-Stewart Equipment Co. v. Myers, 102 S.W.2d 241 (Tex.Civ.App., 1937, writ dism.); Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ. App., 1960, no writ hist.), and Continental Casualty Co. v. Vaughn, 407 S.W.2d 818 (Tex.Civ.App., 1966, writ ref. n. r. e.).

The judgment is affirmed.