NEW YORK LIFE INSURANCE CO.,
Plaintiff-Appellee,

v.

Noel B. BAUM, Defendant-Appellant,

v.

MEDIA SALES & MARKETING, INC.,
Defendant-Counterclaimant
Cross-Plaintiff-Appellant.

No. 78–2688.

United States Court of Appeals,
Fifth Circuit.

May 30, 1980.

Rehearing Denied July 8, 1980.

Philip A. Staskus, John A. Bailey, Tara Wall, Debora D. Ratliff, Robin C. Gibbs, Houston, Tex., for Baum and Media Sales & Marketing.

Baker & Botts, Richard L. Josephson, Houston, Tex., for plaintiff-appellee.

Before COLEMAN, Chief Judge, PECK * and KRAVITCH, Circuit Judges.

COLEMAN, Chief Judge.

The issue in this case is whether the District Court erred when, by summary judgment, it held that a $50,000 life insurance policy issued by the New York Life Insurance Company was null and void. The District Court found the policy to be void *ab initio.* We vacate and remand for further proceedings.

In early 1973, appellant Noel Baum and Bill Cook began discussing a joint business venture. Baum was then a Baton Rouge field underwriter for the New York Life Insurance Company. Cook was an advertis-

* Circuit Judge of the Sixth Circuit, sitting by designation.

ing sales manager at a Baton Rouge television station, with experience in the field of media advertising. Baum and Cook agreed upon a media advertising venture to be named Media Sales & Marketing, Inc. The original intention, as expressed by Baum in his deposition, was that the headquarters of the business was to be in Houston, Texas, but it was to be incorporated in Louisiana.[1] Cook was to furnish the experience for setting up and running the corporation and Baum was to furnish the starting capital. While in the process of setting up Media Sales, Carroll Cutler, a businessman in Houston, Texas, was added to the proposed corporate business venture. According to Baum, it was at this stage of planning that key man life insurance on the three came to be discussed and contemplated.

Baum's personal attorney drew up several drafts of a proposed pre-incorporation agreement, with plans for the business. The parties planned that Baum would contribute up to $45,000.00 for starting capital and helping the business arrange a line of credit. Under this plan, Baum intended to own and control the business during the early stages, with Cook and Cutler to buy back an interest when the business began generating income.

In late 1973, Cook moved to Houston, Texas, where he and Cutler opened an office and began doing business as Media Sales & Marketing, Inc. Baum helped to arrange a line of credit for the business at Bank of the Southwest in Houston. He personally extended considerable sums of money to Cook to use for developing the business.[2] By early November, 1973, however, Media Sales had not been formally incorporated and no operating income was being realized.

At this time, to protect his investment, Baum decided to go ahead with key man life insurance plans. His reciprocal insurance plan called for a policy on Cook with himself as beneficiary. On November 2, 1973, Baum executed an application for insurance on Cook's life, with a face amount of $50,000.00 plus accidental death benefits of $50,000.00. The application designated Media Sales & Marketing, Inc. as the policy owner and Noel Baum, Partner, as the beneficiary. Baum never filled out an application on his own life, with Cook as a beneficiary.

When it received Baum's application for insurance on Cook's life, New York Life (home office) notified Baum that company policy did not allow agents to be named as the beneficiaries in policies issued on the lives of persons other than family members. Baum agreed to change the beneficiary to Media Sales & Marketing, Inc., since he owned the controlling interest in the business. New York Life issued the policy, with an amendment which changed the beneficiary from Baum to Media Sales. The main application form listed the business address as Houston, Texas. The supplementary information policy application form stated that Media Sales had been incorporated in Louisiana in 1973, although actual incorporation had not been accomplished. This form was dated and signed in Baton Rouge, Louisiana. On the date of policy issue, December 8, 1973, no business by the name Media Sales & Marketing, Inc. had been formally incorporated in either Louisiana or Texas.

Twelve days later, December 20, 1973, Cutler, Cook, and another Houston resident formally incorporated in Texas a business named Media Sales & Marketing, Inc. (Media Texas). This business appears to have been distinct from the Media Sales originally planned by Baum. There is conflicting evidence as to whether this incorporation was with Baum's knowledge.

Baum stated in his deposition that the Media Texas business was incorporated

---

1. Since Baum was furnishing the money and wanted to maintain control, Media Sales was to be incorporated in Louisiana, where he planned to continue living. (Baum deposition, pp. 26–28).

2. Baum gave Cook $3,000 on one occasion and $13,500 on another. He had Cook sign two personal notes for these amounts. Baum also periodically advanced Cook sums of money to help Cook out with personal finances.

without his knowledge and "cut me out completely." (Baum deposition at 67). There is other evidence, however, that indicates Baum's awareness to incorporate at some time in Texas. One such piece of evidence was a letter sent to Baum, Cook, and Cutler by Baum's attorney discussing incorporation of the business under Texas law. (Baum deposition, exhibit 11). Baum testified that his first awareness of the formal incorporation of Media Texas was after Bill Cook's death. (Baum deposition at 59.) Cutler testified, however, that he personally informed Baum of the incorporation and that Baum agreed to it. (Cutler deposition at 37).

According to Carroll Cutler, the business was incorporated in Texas to protect the participants from personal liability on business debts caused in part by Baum's failure to provide necessary funds. No stock was ever issued in Media Texas and the corporation never did produce any income.

On December 8, 1974, in Corpus Christi, Texas, Cook was gunned down just twenty minutes after the one year incontestability clause in the insurance policy had run. All the premiums on Cook's policy had been paid by Baum from the time of issuance until Cook's death.

In February, 1978, Baum filed a claim to $100,000.00 in proceeds from Cook's policy. He asserted entitlement to the proceeds because he was the principal financier of the proposed Media Sales Corporation in Louisiana, listed in the policy as the corporate beneficiary, and would have been its principal shareholder following formal incorporation.

In May, 1975, Media Texas filed a claim to the $100,000.00 in policy proceeds. Media Texas asserted that it was the corporate beneficiary designated in Cook's policy.

Faced with these claims, New York Life filed, in the Southern District of Texas, an interpleader action and an action for declaratory judgment (against Baum and Media Texas) to determine whether the Cook insurance policy was void for lack of an insurable interest. Only the sum of premiums paid by Baum was interpled. Baum and Media Texas filed counterclaims against New York Life.

Following discovery, Media Texas moved for summary judgment. Upon the recommendation of the United States Magistrate, the District Court denied this motion. The Magistrate's recommendation had stated in part:

There are material issues of fact in this case that should preclude a summary judgment. There is the obvious conflict between the two claimants to the insurance proceeds. As to the policy, NYLIC claims that the policy never went into effect for various reasons, that the named beneficiary was not in existence when the policy was issued, and has not admitted an "accidental" death. These are factual issues, among others, to be determined at trial.

New York Life then filed its own motion for summary judgment, alleging the Cook policy was null and void from its inception. Baum responded by filing a cross-motion for summary judgment.

On May 25, 1978, the District Court issued a memorandum opinion which held that Louisiana law was controlling because insurance contracts were to be governed by and construed under the law of the place where the contract was made, absent contrary intent of the parties. The Court held that the parties contemplated the applicability of Louisiana law because the policy application was made in Louisiana, the insured party was a Louisiana resident, and the designated beneficiary was a proposed Louisiana corporation. The holding followed that the insurance contract was void *ab initio* under Louisiana law, La.Rev.Stat. Ann. art. 22:613; neither contesting beneficiary had an insurable interest in the insured individual at the time the contract was made—neither Media Sales in Louisiana nor Media Texas were in actual legal existence at the time the contract was made. The District Court entered a final judgment on June 26, 1978, granting summary judgment for New York Life. Media Texas and Baum D/B/A Media Sales & Marketing, Inc. promptly appealed.

■ In diversity cases a federal court is to follow the choice-of-law rules of the jurisdiction in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this case, of course, that state is Texas.

■ Under Texas law, in the absence of a contrary manifestation, an initial presumption is that the parties intend for the law of the jurisdiction where the contract is made to govern. *Dailey v. Transitron Electronic Corp.*, 475 F.2d 12 (5th Cir. 1973); *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697 (Tex.1968); *Fidelity Mut. Life Ass'n v. Harris*, 94 Tex. 25, 57 S.W. 635 (1900). However, where the contract is made in one jurisdiction but to be performed in another the presumption arises that the parties contracted with reference to the place of performance. *Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.*, 486 F.2d 493 (5th Cir. 1973); *Castilleja v. Camero*, 414 S.W.2d 424 (Tex. 1967); *Frey v. Estate of Sargent*, 533 S.W.2d 142 (Tex.Civ.App.1976); *Harris, supra.*

New York Life argues that the insurance policy was made in Louisiana and was intended by the parties to operate there. The appellants Baum and Media Texas suggest that the insurance contract was made in New York, where the home office of New York Life issued the policy. In any event, they emphasize that the parties contemplated performance in Texas, hence Texas law should therefore control the litigation. Furthermore, they assert that New York Life issued the Cook policy through its agent Baum and thus must be charged with full awareness that the named beneficiary had its main office in Houston, Texas, and was to operate from that place.

The importance of the state law found to be controlling lies in the application of that state's definition of insurable interest.

In Louisiana, insurable interest for persons other than close relatives is defined by statute as:

[a] lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured. La.Rev.Stat.Ann. art. 22:613 C.

Texas does not specifically define insurable interest by statute but allows any person, partnership, corporation, association or other legal entity to be the beneficiary of a policy on a person's life and to have an insurable interest in that person's life if so designated by the insured in the insurance policy application. Tex.Ins.Code Ann. art. 3.49–1 § 1. This statute permits a more liberal acceptance of insurable interest in Texas since the named beneficiary is "automatically" given an insurable interest where the insured makes the application for the policy. This statute may not apply in the instant case since the named beneficiary, Media Sales & Marketing, Inc., submitted the application and merely had the insured sign it. If that is so, one looks to general Texas case law to determine if an insurable interest exists in the beneficiary. *Biggs v. Washington Nat. Ins. Co.*, 275 S.W.2d 566 (Tex.Civ.App.1955), states that those having an "insurable interest" in the life of another consist of one closely related by blood desiring the insured to live, irrespective of monetary considerations, *a creditor* (emphasis added), and one having reasonable expectation of pecuniary benefit or advantage from the continued life of the insured.

Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Lee v. Fidelity & Casualty Co. of New York*, 567 F.2d 1340 (5th Cir. 1978).

■ In the light of the foregoing, we are of the opinion that the entry of summary judgment in favor of New York Life was premature.

Upon remand, the District Court should first settle, by appropriate proceedings, the issue of whether the case was, in fact, governed by Texas law, rather than Louisiana law.

If Texas law is controlling, then, of course, Texas law in all its aspects is to be applied in reaching a determination of the issues in the case.

The policy was issued on December 8, 1973. While there was never any incorporation in Louisiana, the Texas incorporation followed only twelve days later. While Baum apparently did not know of the Texas incorporation, his debtor, Cook, was a party to it. There seems to have been no difference in the projected business, whether pursued with a Louisiana charter or a Texas charter. It is not inconceivable that it may become appropriate for the District Court to ascertain whether New York Life was a knowing party to circumventing its own rules, and knew what it was doing when it issued the policy on an application which changed the name of the applicant and beneficiary, leaving unchanged the identity of the insured, all with the further knowledge that Baum, as a creditor, was the real party in interest. Presumably, New York Life knew that it was Baum who was paying the premiums and keeping the policy in force.

New York Life has issued a $50,000 insurance policy. It has accepted the premiums. When all the facts shall have been explored and found, when conflicts in the evidence shall have been resolved, and the applicable state law, shall have been applied, the result may be the same. As to that, we intimate no opinion. What we now hold, on the present state of the record, is that summary judgment was prematurely entered.

VACATED and REMANDED.