**Donald BUDGE, Plaintiff-Appellee,**

v.

**Troy V. POST, Defendant-Appellant.**

No. 80–1184.

United States Court of Appeals, Fifth Circuit. Unit A

April 24, 1981.

Rehearing and Rehearing En Banc Denied June 8, 1981.

Pickett & Teter, Ross Teter, Dallas, Tex., for defendant-appellant.

Gardere, Wynne & Jaffe, Donald C. McCleary, Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and RUBIN, Circuit Judges.

PER CURIAM:

This diversity suit for breach of contract presents eleven grounds of alleged error. We have, of course, carefully considered each of them, but with the premise that our assigned role is neither to retry the case de novo nor to supplant a jury verdict so long as it is supported by substantial evidence.

Don Budge, a former Wimbledon tennis champion and winner of the Davis Cup, contracted with Troy Post to serve as tennis professional at Post's clubs, resorts and hotels for five years, working for seven months each year. The employment contract was executed in 1978 as partial settlement of a prior lawsuit pending in federal court in Texas between Budge and Post. It provides that the agreement "shall be governed by and construed in accordance with

the law of the State of Texas."[1] Pursuant to the contract, Post assigned Budge to the Cambridge Towers Tennis & Racquet Club in Las Vegas where Budge began work in October, 1978. A few months later, Post discontinued payments to Budge under the contract and notified Budge that he was terminating their business relationship, claiming that Budge had violated the contract by failing properly to perform the duties required of the tennis professional under the agreement. Budge subsequently instituted this action contending that Post, not he, had breached the contract by failing to pay him the agreed compensation and by terminating the contract.

After a three-day trial, the jury returned a verdict in Budge's favor, awarding him $353,800 as the compensation he would have received under the contract for the remaining fifty-eight months after Post discontinued payments to Budge, plus $85,500 for the value of the living accommodations and meals that Post had contracted to provide to Budge. To an interrogatory asking the jury what amount of money Budge had earned or, in the exercise of due diligence, could earn in similar employment during the contract period after Post terminated the agreement, the jury responded $1,500. The court entered a judgment for a total of $455,041, the sum of the amounts awarded for compensation and living expenses, minus the $1,500 amount plus $17,241 in attorney's fees. Post moved neither for a directed verdict before submission of the case to the jury nor for a judgment n. o. v.

■ Each of the first seven complaints of error questions the sufficiency of the evidence to support the verdict in Budge's favor, on the merits or in amount, including the amount of mitigating damages. In the absence of a motion for directed verdict, the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal. *Liner v. J.B. Talley and Co.*, 618 F.2d 327, 331 (5th Cir. 1980); *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024 (5th Cir. 1979); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978); *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir. 1977). *See* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2536, at 593 (1971).

■ Our consideration of evidence-adequacy would be tantamount to considering issues raised for the first time on appeal, and we may entertain such virgin issues only to prevent a miscarriage of justice. *Martin Oil Co. v. Gulf Insurance Co.*, 605 F.2d 197, 199 (5th Cir. 1979). Our inquiry is, therefore, "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin v. Capitol Cement Co.*, 571 F.2d at 297; *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 511 (5th Cir. 1970).

■ The record does indeed contain some evidence on each point that, if believed by the jury, would support its findings. We should not and, by the force of our prior decisions, cannot reappraise it. "The seventh amendment forbids appellate judges to sit as post-trial assessors and denies them the power to vacate awards because they might, as fact-triers, have decided differently. *See Lucas v. American Manufacturing Co.*, 630 F.2d 291, 293 (5th Cir. 1980) (in light of the seventh amendment an appellate court should proceed cau-

---

1. In diversity cases a federal court is to follow the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *New York Life Insurance Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir. 1980). Texas, the forum state here, follows the traditional rule of applying the law of the place of performance or the law of the place where the contract was made, *in the absence of a contrary manifestation of intent by the parties. New York Life Insurance*

*Co. v. Baum*, 617 F.2d at 1204; *Dailey v. Transitron Electronic Corp.*, 475 F.2d 12, 14 (5th Cir. 1973); *Austin Building Co. v. National Union Fire Insurance Co.*, 432 S.W.2d 697, 701 (Tex.1968). Thus, the Texas choice-of-law rules provide that if the parties have expressly agreed that the contract is to be governed by the law of a particular state, that intention prevails. *See* 12 Tex.Jur.2d Conflict of Law § 12, at 311 (1960). Therefore, we apply Texas law in this case.

tiously when asked to set aside a jury's verdict)." *Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1175 (5th Cir. 1981). The most meager evidence is Budge's own testimony concerning his efforts to secure other employment and thus mitigate damages. We have reviewed this carefully, and find that, while slight, there is some support for the jury's conclusions. On this record and at this stage of the litigation, whether we would reach a different conclusion on the same evidence is irrelevant.

Post contends that the rate of interest on the judgment is uncertain and indefinite because the trial court awarded interest "at the legal rate." In a diversity case state law governs the award of interest, 28 U.S.C. § 1961, which provides for interest on judgments at the rate allowed by state law, notwithstanding. *E. C. Ernst, Inc. v. Manhattan Construction Co.,* 551 F.2d 1026, 1042 (5th Cir. 1977), *cert. denied sub nom.,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); *Degelos Bros. Grain Corp. v. Fireman's Fund Insurance Co.,* 498 F.2d 1238, 1239 (5th Cir. 1974). *See National Surety Corp. v. Charles Carter & Co.,* 621 F.2d 739, 741 (5th Cir. 1980); *Plantation Key Developers, Inc. v. Colonial Mortgage Company of Indiana, Inc.,* 589 F.2d 164, 170 (5th Cir. 1979). Texas law provides for a nine percent per annum rate of interest on judgments. Title 79, article 5069–1.05, Tex. Rev.Civ.Stat. The legal rate of interest having been established by the state law that is applicable in this case, the district court's designation of interest at the legal rate was not uncertain or indefinite.

Another charge of error relates to the jury selection process. Post complains of sexual discrimination in selection of the jury, although he did not challenge the selection process in the trial court. Barring certain exceptions that are inapplicable here, we refuse to consider for the first time on appeal an issue not raised in the trial court. *In re Novack,* 639 F.2d 1274, 1276 (5th Cir. 1981); *Martin Oil Co. v. Gulf Insurance Co.,* 605 F.2d 197, 199 (5th Cir. 1979); *John Hancock Mutual Life Insurance Co. v. Dutton,* 585 F.2d 1289, 1295

(5th Cir. 1978). In any event, the record contains no evidence to support Post's claim of discriminatory selection of jurors.

The two remaining grounds of error relate to the trial judge's refusal to give the defendant's requested instruction on discounting the award for compensation payments due in the future to present value. The trial court charged the jury that the precise measure of damages was the present cash value of the contract reduced by the amount Budge should have earned to mitigate damages.

In a diversity case, the determination of damages is substantive and is, therefore, governed by state law. *L.C.L. Theatres, Inc. v. Columbia Pictures Industries, Inc.,* 619 F.2d 455, 456 (5th Cir. 1980). *See Murphy v. Georgia Pacific Corp.,* 628 F.2d 862, 869 (5th Cir. 1980) (measure of damages, including the admissibility and jury consideration of evidence of inflation controlled by state law in diversity case); *Weakley v. Fischbach & Moore, Inc.,* 515 F.2d 1260, 1267 (5th Cir. 1975) (same); *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1388 (5th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980) (Erie teaches that state law governs measure of damages, including whether jury may consider remarriage of surviving spouse to mitigate damages in death action). Thus, whether an award of future damages must be reduced to its present value is an issue controlled by state law. *See Avery v. Maremont Corp.,* 628 F.2d 441, 446–47 (5th Cir. 1980); *Clissold v. St. Louis-San Francisco Ry. Co.,* 600 F.2d 35, 38 (6th Cir. 1979); *Magill v. Westinghouse Electric Corp.,* 464 F.2d 294, 300 (3d Cir. 1972).

The Texas cases are not ambiguous. Discounting of future damage awards is adequately handled by the trial judge if he simply instructs the jury that damages are equal to the "sum of money, if any, if paid now in cash" that would compensate the plaintiff. *See Avery v. Maremont Corp.,* 628 F.2d at 446–47; *Atchison, Topeka and Santa Fe Ry. Co. v. Sheppard,* 447 S.W.2d 216, 220 (Tex.Civ.App. Eastland

1969, no writ history); *Continental Casualty Co. v. Vaughn,* 407 S.W.2d 818, 825 (Tex. Civ.App. Houston 1966, *writ ref'd* n. r. e.); *Houston Belt & Terminal Ry. Co. v. Davis,* 19 S.W.2d 77, 80–81 (Tex.Civ.App. Galveston 1929, writ ref'd). Texas courts refuse to amplify this simple instruction because they believe that further explanation would confuse the jury. *Atchison, Topeka and Santa Fe Ry. Co. v. Sheppard,* 447 S.W.2d at 220. We might think that an instruction further explaining the theory of discount would clarify the matter, but we are obliged to accept the decision of the Texas courts. Moreover, no evidence was presented at trial from which a discount rate could be computed. Therefore, the trial court's instruction to the jury to measure damages as the "present cash value" of the contract was an adequate charge under Texas law.

However, although the instruction was correct, the jury evidently did not follow it. The award patently reflected that, to arrive at the figure for earnings due, the jury simply multiplied the monthly compensation contracted for by the parties times the number of months of the contract period for which Budge was not paid. "This Court is empowered to enter a remittitur where 'the error or oversight is patent and the correction mechanical.' *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 574 n.7 (5th Cir. 1979) [*modified on petition for rehearing,* 612 F.2d 905 (5th Cir. 1980)]." *Shingleton v. Armor Velvet Corp.,* 621 F.2d 180, 182 (5th Cir. 1980). *See Davis v. Safeway Stores, Inc.,* 532 F.2d 489, 491 n.4 (5th Cir. 1976); *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 934, *modified on petition for rehearing,* 530 F.2d 34 (5th Cir. 1976). See also *Ferrero v. United States,* 603 F.2d 510, 515 (5th Cir. 1979) (where remand was "mere wasted motion" this court recomputed the award). In this respect our authority to order a remittitur is the same as the district court's. *Shingleton v. Armor Velvet Corp.,* 621 F.2d at 182; *Howell v. Marmpegaso Compania Naviera, S. A.,* 536 F.2d 1032, 1035 (5th Cir. 1976). *See* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2820, at 133–34 (1973); 6A Moore's Federal Practice ¶ 59.-

05[3], at 59–67—59–68 (2d ed. 1979) (although the appellate courts tend to order a new trial as to damages unless the plaintiff remits a stated amount, the authors believe that the appellate court may itself order judgment in a stated amount if the record is sufficient for that purpose). The jury's failure to discount the award of earnings under the contract is an obvious oversight that must be corrected to prevent a manifest miscarriage of justice. Accordingly, we remand the case so that the trial judge, after considering such evidence as he may deem appropriate, may determine an appropriate discount rate and compute the present value of the award for contract earnings.

The judgment in favor of the appellee is AFFIRMED subject to the appellee's acceptance of the recomputation of the award by the trial court. The case is REMANDED for recomputation of the amount due in a manner consistent with this opinion.